# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CEDRICK ALONZO GLENN,

Defendant-Appellant.

UNPUBLISHED
September 10, 2015

No. 321916
Wayne Circuit Court
LC No. 14-000138-FC

Before: TALBOT, C.J., and WILDER and FORT HOOD, JJ.

PER CURIAM.

Cedrick Alonzo Glenn appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH),[1] assault with a dangerous weapon (felonious assault),[2] and possession of a firearm during the commission of a felony (felony-firearm).[3] The trial court sentenced Glenn to 80 to 120 months for AWIGBH, to be served consecutive to a two-year term of imprisonment for felony-firearm, and time served for felonious assault. We affirm.

## I. FACTUAL BACKGROUND

Glenn's convictions arise out of a shooting that occurred on December 13, 2013. Prior to this date, Glenn and Arthur Edward Perry, Jr. disputed who was entitled to possession of a Cadillac Escalade.[4] On the date of the shooting, at about 9:30 p.m. or 10:00 p.m., Perry drove up to his house in the Escalade and parked in the driveway. As Perry got out of the vehicle, he saw Glenn approach from behind the house and walk past him, toward the Escalade. Glenn asked Perry for the Escalade, but Perry refused.

---

[1] MCL 750.84.

[2] MCL 750.82.

[3] MCL 750.227b.

[4] Glenn had purchased the Escalade, but with the intent that one of Perry's relatives would use and pay for the truck. When payments were not made, Glenn demanded the truck be returned.

Perry went into his house and, after about five minutes, walked out of the house with Taronta Washington.[5] The two entered the Escalade, Perry in the driver's seat and Washington in the passenger seat. As Perry began backing out of the driveway, Washington pointed out two men standing nearby. These men were later identified as Dontae Wheeler and Alfred Coats-Plunkett, two friends of Glenn. Washington then grabbed Perry. She said, "he got a gun," and directed Perry to look straight up the driveway. Perry saw Glenn come around the side of the house with a gun. Perry testified that Glenn "cocked the gun back and looked dead at me." Glenn walked down the driveway, following the Escalade, and started firing a handgun at the Escalade. Neither Perry nor Washington was struck. Perry drove until the Escalade broke down and started smoking, about a quarter mile away. Police later observed five bullet holes in the Escalade: two in the front grill, one in the driver's side mirror, one below the driver's side door handle, and one on the driver's side rear quarter panel.

A jury found Glenn guilty of AWIGBH with respect to Perry, felonious assault with respect to Washington, and felony-firearm. Glenn now appeals as of right.

## II. DISCUSSION

## A. PHOTOGRAPHIC EVIDENCE

Glenn first argues that the trial court abused its discretion when it admitted photographs of the Escalade on the second day of trial which had not been previously provided to Glenn. We disagree. This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion.[6] This Court also reviews for an abuse of discretion whether a trial court correctly admits or excludes evidence in light of an alleged criminal discovery violation.[7] "A trial court abuses its discretion when its decision falls outside the range of principled outcomes."[8]

Discovery in a criminal case is governed by MCR 6.201.[9] Under this rule, on the request of an opposing party, a party must provide "a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document, photograph, or other paper, with copies to be provided on request."[10] The rule also imposes on all parties a continuing duty to disclose evidence.[11] If a party fails to comply with the court rule,

---

[5] Washington lived in the house, along with several other of Perry's relatives.

[6] *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).

[7] MCR 6.201(J). See also *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002).

[8] *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (citation and quotation marks omitted).

[9] *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 447; 722 NW2d 254 (2006), citing *People v Phillips*, 468 Mich 583, 588; 663 NW2d 463 (2003).

[10] MCR 6.201(A)(6).

[11] MCR 6.201(H).

various sanctions are available, including ordering disclosure, granting a continuance, or prohibiting introduction of the evidence.[12]   Fashioning an appropriate remedy involves a balancing of "the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance."[13]   The complaining party must also demonstrate that the violation caused him or her actual prejudice.[14]

Before trial, the prosecutor requested that the Detroit Police Department take photographs of the Escalade.  Glenn's counsel requested copies of the photographs.  The prosecutor informed Glenn's counsel that the police did not follow through with the request, and thus, there were no photographs to provide.  Then, on the first day of trial, the prosecutor informed Glenn's counsel that an officer photographed the Escalade that day and provided counsel with four photographs.  Glenn's counsel did not object to the introduction of these four photographs.

On the second day of trial, the prosecutor asked Sergeant Nathan Duda if he had taken the four photographs of the Escalade.  Duda confirmed that he did, and mentioned that he had "additional photographs as well."  Duda explained that he took the photographs of the Escalade on the first day of trial and that he had attempted to send these photographs to the prosecutor via email, but that the email failed.  Glenn's counsel repeatedly objected to the admission of these additional photographs.  The trial court took a recess for lunch and requested that the additional photographs be printed.  After the break, the prosecutor provided the additional photographs to Glenn's counsel and to the trial court.  Over Glenn's objection, the trial court granted the prosecutor's request to introduce these additional photographs.

Under these circumstances, we do not find that the trial court's admission of the photographs was an abuse of discretion.  "[T]he exclusion of otherwise admissible evidence is a remedy which should follow only in the most egregious cases."[15]   Both parties only became aware of the existence of the photographs when Duda mentioned that he had taken them.  Clearly, the prosecutor was not attempting to gain a tactical advantage by hiding evidence until after trial commenced because she did not know the additional pictures existed.  This is not an example of an egregious discovery violation.

Nor can Glenn demonstrate any prejudice arising from the introduction of the photographs.  Duda testified regarding the number and location of the bullet holes found in the Escalade, the same information demonstrated by the photographs.  Glenn's counsel was provided copies of the photographs and given an opportunity to cross-examine Duda.  Moreover, the photographs proved beneficial to Glenn.  Because the photographs were taken at the police impound lot, the introduction of the photographs allowed Glenn to argue that the Escalade could

---

[12] MCR 6.201(J).

[13] *Banks*, 249 Mich App at 252.

[14] *People v Davie (After Remand)*, 225 Mich App 592, 598; 571 NW2d 229 (1997).

[15] *People v Taylor*, 159 Mich App 468, 487; 406 NW2d 859 (1987).  See also *Greenfield*, 271 Mich App at 454 n 10 (same).

have been shot at while sitting out in the open in the impound lot for three months, an argument favorable to Glenn.[16]  Under these circumstances, the trial court did not abuse its discretion by allowing the photographs into evidence.

## B.  MISSING WITNESS INSTRUCTION

Glenn next argues that the trial court abused its discretion by refusing to give a missing witness instruction.  We disagree.  This Court reviews "a trial court's determination of due diligence and the appropriateness of a 'missing witness' instruction for an abuse of discretion."[17]

A missing witness instruction[18] may be appropriate when the prosecution fails to produce an endorsed witness who has not been properly excused.[19]  "A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence.  If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case."[20]  "[D]ue diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of a witness . . . ."[21]  Whether the missing witness instruction is appropriate "will depend on the specific facts of the case."[22]

Glenn argues that the prosecutor did not act with due diligence to procure Officer David Tanner at trial.  On the second day of trial, the arresting officers, Officer Delvecchio Thompson and Tanner, failed to appear at court to testify.  The prosecutor explained:

> The officer in charge has been trying to locate both officers for the past two days, actually, and has been unable to contact them.  I've sent subpoenas to the officers.  I've done all the necessary steps that the prosecutor need[s] to do by sending these subpoenas, sending them through the DPD email this morning.

Glenn's counsel suggested that a missing witness instruction would be appropriate.  The trial court did not rule on the issue at that time, instead choosing to wait to see if Thompson and Tanner would appear the next day.  The following day, Thompson appeared and testified, but Tanner did not.  The officer in charge, Detective John Velasco, testified that "[w]e tried to get

---

[16] This argument provided another avenue supporting Glenn's theory of the case, which was that Glenn never shot at the Escalade, and that the Escalade was shot at by someone else after Perry drove it away from his home.

[17] *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004).

[18] See M Crim JI 5.12.

[19] *People v Perez,* 469 Mich 415, 420; 670 NW2d 655 (2003).

[20] *Eccles*, 260 Mich App at 388-389 (citations omitted).

[21] *Id.* at 391.

[22] *Perez*, 469 Mich at 415.

him here. We tried—I've exhausted every avenue to get him here. . . . Called him, text[ed] him, put subpoenas everywhere at the station." The prosecutor raised the question of providing a missing witness instruction, and the trial court decided against giving the instruction. Glenn did not argue the point.

The trial court's decision was not an abuse of discretion. Tanner was one of the arresting officers in this case and he remained employed by the Detroit Police Department. There is no evidence indicating that the prosecutor had any reason to doubt whether Tanner would appear for trial. When Tanner did fail to appear, both the prosecutor and the officer in charge attempted to secure his presence. The prosecutor sent subpoenas via Detroit Police email to Tanner, and Velasco went further by calling him, texting him, and posting subpoenas at the police station where Tanner worked. Glenn argues that the prosecutor should have taken an additional step, specifically, sending a subpoena to Tanner's home, and that Velasco should have gone to Tanner's home to attempt to find him and serve him with a subpoena. But "due diligence" is the attempt to do everything reasonable to obtain the presence of a witness, not everything possible.[23] Under the circumstances, the prosecutor made reasonable efforts to obtain Tanner's presence, and accordingly, a missing witness instruction was not required.

Glenn also argues that because his counsel failed to renew his request for the missing witness instruction or object to the failure to instruct, counsel was ineffective. The argument is specious, given that counsel did request the instruction, the prosecutor again raised the point, and the trial court ruled on the issue. Regardless, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."[24] As Glenn was not entitled to the instruction, counsel was not ineffective for failing to further advance a meritless argument.

## C. JUDICIAL BIAS

Glenn next argues that the trial court abused its discretion when it questioned several witnesses at trial. We disagree. Glenn failed to preserve this issue by objecting to the trial court's questioning of witnesses during trial.[25] Thus, this Court's review is for plain error that affected substantial rights.[26] To be entitled to relief, Glenn must demonstrate that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the error affected his substantial rights.[27] "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings."[28] Finally, even if these requirements are

---

[23] *Eccles*, 260 Mich App at 391.

[24] *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

[25] *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011).

[26] *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *Jackson*, 292 Mich App at 597.

[27] *Carines*, 460 Mich at 763.

[28] *Id.*

met, "an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."[29]

Our Supreme Court recently clarified the proper scope of a trial court's questioning of witnesses:

> [W]hen evaluating a judge's questioning of witnesses, a reviewing court must first bear in mind that such interrogation is generally appropriate under MRE 614(b). This Court has stated the central object of judicial questioning should be to clarify. Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or to elicit additional relevant information. Judicial questioning, nevertheless, has boundaries. . . .
>
> * * *
>
> It is inappropriate for a judge to exhibit disbelief of a witness, intentionally or unintentionally. It is essential that the judge not permit his own views on disputed issues of fact to become apparent to the jury.[30]

Glenn first claims that the trial court improperly questioned Washington. The trial court asked Washington a series of questions regarding how Glenn was dressed during the shooting. The trial court also questioned Washington regarding her familiarity with Glenn. Nothing in the record demonstrates any improper questioning by the trial court. The trial court did not exhibit any disbelief of Washington, or any other bias or prejudice. As it is permitted to do, the trial court sought to "produce fuller and more exact testimony [and] elicit additional relevant information."[31] Accordingly, we find no error.

Glenn next claims that the trial court improperly questioned Duda:

> *Trial Court*. All right. I have a—I skimmed over the pictures. But the damage to the driver's side mirror was—are you able to say what direction the shot was coming from when it hit the mirror?
>
> *Sergeant Duda*. I could reasonably conclude that if I took a rod, a steel rod roughly 12 inches in length, and I was to place it in line with the end position, that final hole within the triangle and where the mirror was struck, the shot came slightly from the side and towards the rear of the vehicle.

---

[29] *Id*. at 763-764 (quotation marks, brackets, and citation omitted).

[30] *People v Stevens*, ___ Mich ___, ___; ___ NW2d ___ (2015) (slip op at 10-11) (citations, quotation marks, and footnote omitted).

[31] *Id*. at ___ (slip op at 11).

*Trial Court*. Okay. Thank you. That's the only question—

Again, the trial court's questioning was limited to producing more precise testimony. Noting in this questioning demonstrates disbelief of the witness or that the trial court was biased or prejudiced in any way. We find no error in the trial court's questioning of Duda.[32]

Glenn also argues that the trial court's questioning of Wheeler and Coats-Plunkett was exceedingly adversarial and "crossed the line from a simple clarification of witness testimony to a multitude of impermissibly suggestive and prejudicial questions" posed to these witnesses. Contrary to Glenn's assertions, the questions posed to these witnesses did not demonstrate any form of prejudice by the trial court. As it did with other witnesses, the trial court simply attempted to gain a better understanding of what happened during the incident from the perspective of these witnesses. The trial court did not express any opinion or disbelief of these witnesses; it merely clarified where these witnesses were and what they observed during the shooting. Such questioning is entirely proper.[33]

Glenn also contends that his counsel was ineffective for failing to object to the trial court's questioning of the witnesses. However, as there was no impermissible conduct by the trial court, any objections would have been futile. Again, counsel is not ineffective for failing to raise futile objections.[34]

## D. PROSECUTORIAL MISCONDUCT

Glenn asserts that the prosecutor engaged in misconduct during closing argument when she attacked the credibility of Glenn's stepfather, Deon Rollins, by stating that his behavior on the night of the incident was "ridiculous" and "inappropriate." We disagree. Because Glenn did not raise the argument below, we review the issue for plain error affecting Glenn's substantial rights.[35]

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial."[36] "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial."[37] A prosecutor may not make a statement of fact to the jury that is unsupported by the evidence, but they are "free to argue the evidence and all reasonable inferences arising from the evidence as it

---

[32] *Id.*

[33] *Id.*

[34] *Ericksen*, 288 Mich App at 201.

[35] *Carines*, 460 Mich at 763.

[36] *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).

[37] *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008).

relates to their theory of the case."[38]  A prosecutor may also argue from the facts in evidence that a witness is worthy or unworthy of belief.[39]

Glenn assigns error to the following statements during closing argument:

Now, I want you to think about the defendant's step-father's testimony. He got on the stand and testified to us that he works for the Department of Education or DPS.  That he told his step-son, let me check into roll call and then I'll come back and help you.  Think about that when you judge the credibility of his testimony.

You are on the job for the Detroit Public Schools.  You are working for the Board of Education.  But you take it upon yourself to go interfere with the Detroit Police Department investigation for a family member.  That's inappropriate and it goes to his credibility.  You then check into roll call to make sure that you're accounted for being there for the day and then you leave and you go do DPD work when you're not a Detroit Police officer.

You listen to their dispatch.  You chime in on their radios.  You go in a scout car, issued for the Department of Education for the Detroit Police, turn the lights on and go to a location where you think there may have been a shooting where your step-son is involved.  It's ridiculous.  It's inappropriate behavior and it goes to the character of that witness.  And I want you all to consider that.

Then he continues for hours.  Not working for the Detroit Public Schools, but interfering with this investigation and updating a suspect.  And giving him information about what's going on, where vehicles are, who's called 9-1-1 and updating this defendant.

Well, I submit to all of you to think about that and think about how the defendant formed his story or formed the theory that's been given to him.

None of these comments require reversal.  While the prosecutor was aggressive with some of her remarks, prosecutors are typically afforded great latitude regarding their arguments and conduct at trial.[40]  The prosecutor's remarks were valid commentary based on Rollins's own testimony and reasonable inferences arising therefrom.  From this testimony, the prosecutor was permitted to argue that Rollins was unworthy of belief.[41]

---

[38] *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

[39] *Dobek*, 274 Mich App at 67.

[40] *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995).

[41] *Unger*, 278 Mich App at 236; *Dobek*, 274 Mich App at 67.

Glenn also contends that counsel was ineffective for failing to object to the above comments by the prosecutor. Because there was no improper commentary, any objection would have been futile. Once again, counsel is not ineffective for failing to raise a futile argument.[42]

## E. INSUFFICIENT EVIDENCE

Defendant next argues that his conviction of AWIGBH must be vacated because there was insufficient evidence that he attempted or intended to cause great bodily injury. "This Court reviews de novo claims of insufficient evidence, viewing the evidence in the light most favorable to the prosecution, to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt."[43] Any conflicts in the evidence are resolved in favor of the prosecution.[44] Circumstantial evidence and reasonable inferences arising from that evidence may constitute proof of the elements of the crime.[45] This Court must also "defer to the fact-finder's role in determining the weight of the evidence and the credibility of witnesses."[46]

The elements of AWIGBH are "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder."[47] "This Court has defined the intent to do great bodily harm as an intent to do serious injury of an aggravated nature."[48] A defendant's intent may be inferred from all the facts and circumstances surrounding the crime.[49]

Glenn argues that the evidence does not support a conclusion that he intended to do great bodily harm because it shows only that he shot at the Escalade. Glenn's actions provided sufficient circumstantial evidence of his intent to do great bodily harm to support his conviction. At the time Glenn shot at the Escalade, Perry was seated in the driver's seat. The majority of the bullets entered the driver's side of the vehicle. That Glenn pointed a gun directly at Perry,

---

[42] *Ericksen*, 288 Mich App at 201.

[43] *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010).

[44] *Id*. at 472.

[45] *Id*.

[46] *Id*.

[47] *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997).

[48] *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citation omitted).

[49] *People v Lugo*, 214 Mich App 699, 709-710; 542 NW2d 921 (1995).

cocked it, and then shot the gun in the direction of Perry, multiple times, at relatively close range was sufficient to support the jury's conclusion that Glenn intended to cause great bodily harm.[50]

Glenn also points to several "glaring holes" he believes existed in the prosecution's case. These "holes" all essentially challenge the weight and credibility of the evidence presented. Such matters are properly left to the jury to decide, and we decline Glenn's invitation to interfere with the jury's decision.[51]

## F. CUMULATIVE ERROR

Finally, Glenn argues that the cumulative effect of the errors in this case deprived him of his right to due process. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal."[52] Because Glenn has failed to establish the existence of any error, there can be no cumulative error.

Affirmed.

/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Karen M. Fort Hood

---

[50] See *People v Dillard*, 303 Mich App 372, 378; 845 NW2d 518 (2013) (explaining that a defendant's actions can provide circumstantial evidence of his intent to commit great bodily harm, and that "it is not necessary for any actual injury to occur.").

[51] *Bennett*, 290 Mich App at 472.

[52] *Brown*, 279 Mich App at 146 (citations omitted).