# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY MONTEZ FULGHAM,

        Defendant-Appellant.

UNPUBLISHED
January 19, 2016

No. 323281
Wayne Circuit Court
LC No. 13-008738-FC

Before: RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

PER CURIAM.

A jury convicted defendant of second-degree murder, MCL 750.317, possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 50 to 80 years' imprisonment for the second-degree murder conviction, three to five years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm.

## I. FACTS

Defendant's convictions arise from the June 8, 2013 shooting death of 24-year-old Robert Edwards, who died from a single gunshot wound to his chest. According to witness testimony, defendant and the victim were engaged in conversation on a street corner during the evening while it was still light outside. Michael Haliburton, who witnessed the incident, saw another man come up to the two men. Juwan Lumpkin testified that he joined defendant and Edwards. Lumpkin heard defendant say something about a house that had burned down. Haliburton heard one gunshot, and then looked up and saw a man wearing a white Polo shirt and bright white gym shoes fire a second gunshot toward Edwards, who was running away. The police discovered Edwards's body a short distance away. The police arrested defendant in his residence approximately six hours later. They found a firearm on a pillow in defendant's bedroom. Ballistics testing confirmed that this firearm was the weapon used to shoot Edwards. Lumpkin gave a statement to the police in which he identified defendant as the shooter. At trial, Lumpkin identified a third person, known as J.D., as being involved in the incident. According to Lumpkin, both J.D. and defendant had guns. Lumpkin claimed that he previously identified defendant as the shooter only because the police threatened to charge him with the offense unless he implicated defendant.

-1-

Defendant testified at trial that he was with Edwards at the time of the shooting, but claimed that Edwards and J.D. had been involved in a fight the previous night and that J.D. approached Edwards on the street on the night of the incident and began firing his gun. J.D. was also wearing a white shirt on the night of the incident. Defendant testified that he ran away when the shooting began. He also saw Edwards running, so he thought Edwards was okay. Defendant met J.D. at a neighborhood "hang out" later that evening. According to defendant, J.D. appeared intoxicated, so defendant took J.D.'s gun and brought it home with him. Defendant denied knowing that Edwards had been shot. He claimed that he tried to call Edwards later that night, but the call went directly to Edwards's voice mail.

## II. PRESERVATION OF EVIDENCE

Defendant argues that his right to due process was violated because the police failed to investigate or preserve material evidence. We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Since the issue was not raised in the trial court, it is unpreserved. See *id*. Because this issue is unpreserved, our review is limited to plain error affecting defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. The last requirement involves a showing of prejudice, meaning that the error affected the outcome of the trial court proceedings. *Id*. Finally, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted; second alteration in original).

The right to due process under the Fourteenth Amendment to the United States Constitution prohibits the prosecution from suppressing material evidence favorable to the defense. *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To establish a *Brady* violation, the defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) viewed in its totality, the evidence was material. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). In contrast, when the government fails to preserve evidence whose exculpatory value is indeterminate or "potentially useful," the defendant has the burden of proving that the government acted in bad faith in failing to preserve the evidence. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988). However, this bad-faith standard does not apply to evidence that has not yet been developed because neither the police nor the prosecution has a duty to assist a defendant in developing potentially exculpatory evidence. *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006).

Defendant first argues that his right to due process violated because the police failed to preserve the clothing he was wearing at the time of the offense. Although the police collected defendant's clothing at the time of his arrest, testimony at trial revealed that the clothing was no longer available because it had been lost or destroyed in a flood that occurred at the police

station. Because this evidence was not intentionally lost or destroyed by the police, there is no basis for finding that the police acted in bad faith in failing to preserve the evidence. See *Youngblood*, 488 US at 57-58. Further, there is no indication that the clothing would have been potentially useful to the defense. Defendant does not dispute that the clothing matched the description of the clothing worn by the shooter. Although defendant claims that the clothing could have been tested for gunshot residue, testimony at trial indicated that the police no longer perform gunshot residue testing because it is not considered accurate. Thus, defendant fails to show that his due-process rights were violated with regard to the lost or destroyed clothing. See *id*.

Defendant also contends that the police failed to test him for gunshot residue after his arrest. In light of the testimony that gunshot residue testing is no longer performed because of its questionable accuracy, defendant cannot establish that the police acted in bad faith by failing to test him for gunshot residue. See *Youngblood*, 488 US at 57-58. In addition, there is no basis for concluding that any testing would have been exculpatory, particularly because there was a lapse of up to six hours between the time of the shooting and defendant's arrest, thereby giving defendant the opportunity to wash away any residue or allow any residue to disappear naturally. Thus, defendant's argument fails. See *id*.

Defendant also argues that the police should have obtained Edwards's telephone records to confirm whether defendant had called Edwards's cell phone after the shooting. This argument does not involve suppression of evidence or a failure to preserve evidence, but rather a failure to develop evidence in the state's possession. As indicated previously, neither the police nor the prosecution had a duty to assist in developing evidence for defendant's benefit. See *Anstey*, 476 Mich at 461. Moreover, defendant does not offer any reason why the police should have expected Edwards's phone to contain material evidence. Defendant admitted in his testimony that he did not inform anyone that he had called Edwards after the shooting. Therefore, defendant cannot establish that the government acted in bad faith by failing to request Edward's telephone records. Furthermore, defendant could have presented evidence in the form of his own telephone phone records to establish that he called Edwards's cell phone after the shooting. In addition, even if the records had been obtained and showed that defendant called Edwards after the shooting, this evidence would not have eliminated the possibility that defendant was the shooter. See *Youngblood*, 488 US at 57-58. Thus, this argument does not support defendant's claim of a due-process violation. See *id*.

Defendant also argues that the police failed to test for fingerprints the handgun recovered from his bed at the time of his arrest. At trial, there was testimony that police officers handled the gun at the time of defendant's arrest because they were more concerned with taking control of the gun for officer safety. It was examined later for fingerprints, but there were too many prints to reveal useable prints. Under the circumstances, defendant has failed to show that the police acted in bad faith with regard to how they handled the gun. See *Youngblood*, 488 US at 57-58. For these reasons, defendant has failed to meet his burden of demonstrating a plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

## III. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues in his brief on appeal and in his Standard 4 brief that there was insufficient evidence to support his second-degree murder conviction. We disagree.

> This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt. [*People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014) (citation omitted).]

"We 'will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses.' " *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012) (citation omitted).

The elements of second-degree murder are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014) (citations and quotation marks omitted). "Malice" is defined as " 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.' " *Id*. at 9-10 (citation omitted). Defendant argues that no one clearly identified him as the shooter. Identity is an essential element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Positive identification by a witness can be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The credibility of identification testimony is a question for the trier of fact to resolve, and this Court will not resolve the issue anew. *Id*.

Haliburton testified that he did not see who fired the first shot, but he saw a man in a white Polo shirt, who had been talking to Edwards, fire the second shot at Edwards. Haliburton's description of the shooter's clothing matched the clothing worn by defendant. Defendant admitted that he had been at the corner talking to Edwards and was wearing clothing that matched Haliburton's description. The murder weapon was found in defendant's possession at the time of his arrest, several hours after the shooting. Ballistics testing confirmed that the bullet that struck Edwards was fired out of the gun that was found in defendant's possession. This testimony, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find beyond a reasonable doubt that defendant was the person who shot Edwards. See *Lane*, 308 Mich App at 57; *Yost*, 278 Mich App at 356.

Lumpkin admitted that he previously told the police that defendant was the shooter, but claimed that he was pressured into making that statement. Contrary to Lumpkin's and defendant's trial testimony, Haliburton did not observe a fourth person or someone who could have been the person identified as J.D. in the area near the time of the shooting. For purposes of defendant's sufficiency challenge, we are required to resolve all conflicts in the testimony and all credibility questions in favor of the prosecution. See *Eisen*, 296 Mich App at 331. It was up to the jury to resolve any conflicts in the testimony, as well as the credibility of defendant's testimony that he took the gun from J.D. shortly after the shooting. Viewed in this manner, the

evidence was sufficient to support defendant's conviction of second-degree murder. See *Lane*, 308 Mich App at 57; *Henderson*, 306 Mich App at 9-10.

## IV. TIMELINESS OF THE PRELIMINARY EXAMINATION

Defendant argues in his Standard 4 brief that his convictions should be reversed and the case dismissed because his preliminary examination was not held within 14 days after his arraignment and the district court erred in finding that there was good cause for the delay. We disagree.

Even accepting defendant's contention that he timely raised this issue before the preliminary examination, defendant is precluded from raising this issue on appeal because he did not challenge the district court's adverse decision either in an application for leave to appeal in the circuit court or in a timely motion to dismiss in the circuit court. *People v Crawford*, 429 Mich 151, 161-162; 414 NW2d 360 (1987). Moreover, failure to timely conduct a preliminary examination is deemed to be harmless error unless actual prejudice is demonstrated. MCR 6.110(B)(1). Defendant does not explain how he was prejudiced by the delay in conducting the preliminary examination. Accordingly, defendant's claim fails. See *id*.

## V. WITNESS INTIMIDATION

Defendant also argues in his Standard 4 brief that the prosecutor committed misconduct by intimidating, forcing, or threatening Lumpkin into testifying untruthfully. We disagree.

A defendant preserves the issue by objecting to the alleged impropriety in the trial court. See *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015). Because defendant did not object to Lumpkin's testimony or the prosecutor's conduct at trial, this issue is unpreserved and review is limited to plain error affecting defendant's substantial rights. *Id*.

Prosecutorial intimidation of a witness violates a defendant's right to due process if the intimidation is successful. See *People v Hill*, 257 Mich App 126, 135; 667 NW2d 78 (2003); *People v Canter*, 197 Mich App 550, 569; 496 NW2d 336 (1992). In addition, a prosecutor may not knowingly use false testimony and has a constitutional obligation to correct evidence known to be false. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015).

Although Lumpkin identified defendant as the shooter in a prior statement to the police, he testified at trial that his previous statement was a lie. He claimed that he previously identified defendant as the shooter only because the police threatened to charge him with the offense if he did not implicate defendant. Defendant now argues that the prosecutor engaged in misconduct through witness intimidation and presenting Lumpkin's testimony at trial, knowing that he was not testifying truthfully. The record does not support defendant's argument that the police or prosecution coerced Lumpkin's trial testimony or that the prosecutor knowingly offered perjured or false testimony by calling Lumpkin as a witness at trial. Indeed, it is defendant's position that Lumpkin testified truthfully at trial that defendant was not the shooter. It is undisputed that Lumpkin gave a prior statement to the police that was inconsistent with his trial testimony, and the prosecution was entitled to use that statement to impeach Lumpkin's trial testimony. See MRE 613; *People v Rodriguez*, 251 Mich App 10, 34; 650 NW2d 96 (2002). The use of prior inconsistent statements that contradict trial testimony is not evidence of the knowing use of

perjured testimony when the prosecutor does not attempt to conceal the contradictions or different versions. See *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Thus, defendant has not shown that the prosecutor acted improperly. See *Cooper*, 309 Mich App at 88.

## VI. WITNESS PRODUCTION

Defendant argues in his Standard 4 brief that reversal is required because two witnesses, Savannah Hall and Jasmine Wright, were not produced at trial. We disagree.

As discussed above, "[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *Metamora Water Serv, Inc*, 276 Mich App at 382. Because defendant did not object to the failure to produce these witnesses or request their production, this issue is unpreserved and review is limited to plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763.

MCL 767.40a(1) provides, "The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers." MCL 767.40a(3) adds, "Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial." As explained in *People v Eccles*, 260 Mich App 379, 388-389; 677 NW2d 76 (2004):

> A prosecutor who endorses a witness under MCL 767.40a(3) is obliged to exercise due diligence to produce that witness at trial. A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence. If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case. [Citations omitted.]

The prosecutor's witness list identified Jasmine Wright, Savannah Hall, Michael Haliburton, and Juwan Lumpkin as witnesses to be called at trial, but included next to the names of these witnesses the phrase "and/or." Because the witness list conveyed to defendant that all four witnesses identified as "and/or" witnesses would not necessarily be called at trial, we conclude that the prosecutor was not obligated to call all four witnesses at trial, particularly in the absence of any request by defendant. Defendant points out that the prosecutor had a duty to provide reasonable assistance to him to locate and serve process on a witness upon request. See MCL 767.40a(5). However, there is no indication in the record that defendant requested reasonable assistance to locate and serve process on Wright or Hall. See *id*. Furthermore, even assuming that there was an error, defendant fails to establish that the error affected the outcome in the trial court since he fails to explain how the testimony of these witnesses would have been beneficial to the defense. Instead, defendant argues that the prosecution improperly utilized the proposed testimony of Wright and Hall in its warrant request, which implies that the testimony of Hall and Wright would have been beneficial to the prosecution. Accordingly, defendant has not shown a plain error. See *Carines*, 460 Mich at 763; *Eccles*, 260 Mich App at 388-389.

-6-

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues in his Standard 4 brief that defense counsel rendered ineffective assistance when she (1) failed to obtain and produce Edwards's telephone records at trial, (2) elicited testimony regarding defendant's prior convictions during defendant's direct examination, (3) stipulated that Detective-Sergeant Dean Molnar, Jr., was qualified as an expert in firearms and tool mark examination, (4) failed to raise the issue whether dismissal of the case was proper because of the failure to timely hold the preliminary examination, and (5) failed to object to the fact that the prosecution did not produce Hall and Wright or request a missing witness jury instruction. We disagree.

A defendant preserves the issue of ineffective assistance of counsel by moving for a new trial or a *Ginther*[1] hearing in the trial court. See *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Since defendant failed to move for a new trial or a *Ginther* hearing in the trial court, we review the issue for mistakes apparent on the record. *Id*.

An ineffective assistance of counsel claim is a mixed question of law and fact. *Petri*, 279 Mich App at 410. "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*.

"In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). With regard to whether defense counsel's performance was deficient, there is a strong presumption that defense counsel's performance constituted sound trial strategy. *Id*. at 52. Additionally, the burden is on defendant to produce factual support for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

### A. TELEPHONE RECORDS

Defendant testified at trial that he called Edwards after the shooting, but his call went to Edwards's voice mail. Testimony suggested that Edwards's telephone was collected from the area where he was found, but the telephone was never checked and the police never requested any telephone records. Defendant argues that defense counsel was ineffective for not obtaining and producing Edwards's telephone records at trial.

First, defendant has not submitted an offer of proof to show that he told his attorney about the phone call. At trial, defendant testified that he did not tell anyone that he called Edwards's phone before mentioning it in his testimony.[2] Second, even assuming that defendant

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] Defendant explained that he thought that his telephone records would be automatically obtained.

told counsel about the call, defendant has not overcome the presumption that counsel's decision not to pursue that evidence was reasonable trial strategy. Counsel reasonably may have decided not to request the records because, even if the records could be obtained and showed that defendant made a call to Edwards's phone after the shooting, that evidence would not have been significant. The records would only have shown that a call was placed, not the reason for the call or that defendant could not have been the shooter. Evidence that defendant actually called Edwards's phone was not inconsistent with defendant's guilt because defendant may have called for a variety of reasons, including to deflect suspicion away from him as a suspect or to confirm that Edwards did not survive the shooting. See *Trakhtenberg*, 493 Mich at 51. For the same reason, defendant fails to show a reasonable probability that, but for defense counsel's conduct, the result of the trial would have been different. See *id*.

## B. DEFENDANT'S PRIOR RECORD

Defendant also argues that defense counsel was ineffective for eliciting evidence of his prior convictions on direct examination. Before trial, defense counsel moved to preclude admission of defendant's prior convictions for receiving or concealing stolen property, MCL 750.535, armed robbery, MCL 750.529, and carjacking, MCL 750.529a, for purposes of impeachment under MRE 609, should defendant testify. The trial court denied the motion. Defendant elected to testify at trial. Near the end of defense counsel's direct examination, counsel elicited defendant's admission that he had prior convictions for armed robbery, carjacking, and assault with intent to commit murder, MCL 750.83.

The questioning of witnesses is presumed to be a matter of trial strategy. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defendant has not overcome the presumption that counsel's decision to preemptively elicit defendant's prior convictions on direct examination was reasonable trial strategy, intended to "soften the blow" of this evidence after the trial court had ruled that defendant's prior convictions would be admissible for impeachment. Counsel also used the evidence of defendant's prior convictions to explain defendant's state of mind when he took the gun away from J.D. Although the trial court's pretrial ruling did not extend to defendant's conviction for assault with intent to commit murder, the record discloses that defendant volunteered that conviction during direct examination. Accordingly, defendant has not shown ineffective assistance of counsel with respect to this issue. See *Trakhtenberg*, 493 Mich at 51-52; *Dixon*, 263 Mich App at 398.

## C. EXPERT TESTIMONY

Defendant also argues that defense counsel was ineffective for stipulating that Detective Molnar was qualified as an expert in firearms and tool mark examination. Defendant fails to overcome the strong presumption that defense counsel's decision to stipulate to Detective Molnar's qualification as an expert was a matter of trial strategy. The record discloses that Detective Molnar worked for the Michigan State Police Firearms and Tool Mark Unit since 2009, and there is nothing to suggest that he was not qualified to testify as an expert in that field. It was not unreasonable for counsel to stipulate to Molnar's qualifications to prevent the jury from hearing additional information about Molnar's training, experience, or knowledge in this area. Moreover, because defendant has made no showing that Detective Molnar lacked the necessary knowledge, skill, experience, training, or education to be qualified as an expert under

MRE 702, defendant has not established that he was prejudiced by defense counsel's stipulation. See *Trakhtenberg*, 493 Mich at 51-52.

## D. PRELIMINARY EXAMINATION

We also reject defendant's claim that defense counsel was ineffective for failing to raise the issue whether dismissal was proper because of the failure to timely hold the preliminary examination. Defendant has not shown that he was prejudiced by counsel's inaction. Even if counsel had timely raised this issue and obtained dismissal of the case, that dismissal would have been without prejudice to refiling the case. See *Crawford*, 429 Mich at 157. Thus, defendant fails to show prejudice. See *Trakhtenberg*, 493 Mich at 51.

## E. MISSING WITNESS JURY INSTRUCTION

Defendant also argues that defense counsel was ineffective for not objecting to the failure to produce Hall and Wright as witnesses and for not requesting that the court read the missing witness instruction to the jury. Defendant contends that the witnesses should have been called because they gave statements to the police that contributed to the issuance of an arrest warrant for defendant. Assuming that to be true, it was not unreasonable for counsel to believe that the witnesses would not have been able to provide favorable testimony. Defendant has not presented any evidence to suggest otherwise. Thus, defendant has not overcome the presumption that defense counsel's failure to request the production of these witnesses was reasonable trial strategy. And because the defense did not request production of the witnesses and no due diligence hearing was held, there was no basis for counsel to request the missing witness instruction. See *Eccles*, 260 Mich App at 388-389. Counsel is not ineffective for failing to make a futile request. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## F. EVIDENTIARY HEARING

Although defendant asserts his belief that the record is sufficient to resolve his ineffective assistance of counsel claims, he requests a remand for an evidentiary hearing if this Court concludes otherwise. We agree that the record is sufficient to resolve defendant's claims. In addition, defendant has not otherwise presented an offer of proof of facts requiring further development at an evidentiary hearing. Therefore, remand for an evidentiary hearing is not warranted. *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

Affirmed.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood