# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHUKUR TEROME BROWN,

        Defendant-Appellant.

UNPUBLISHED
February 25, 2016

No. 324189
Genesee Circuit Court
LC No. 13-034170-FC

Before: RONAYNE KRAUSE, P.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 22-½ to 40 years' imprisonment for his second-degree murder conviction, and two years' imprisonment for his felony-firearm conviction. We affirm.

This case arises from the shooting death of 15-year-old Gianni Herron. Defendant, his cousin Veondra Bartee, and Herron were in defendant's basement during the early morning hours of January 1, 2013. The three smoked marijuana while "playing" with guns in the basement. The three were "playing, giggling," while holding their guns and pointing them at each other. At some point between 2:00 a.m. and 3:00 a.m., however, Herron jokingly pointed his gun at Bartee and said, "I could have shot you . . . ." In response, Bartee, also jokingly, raised his gun at Herron and said, "[N]o it won't happen like that." Defendant also raised his shotgun in jest towards Herron and said, "[W]on't happen like that." However, defendant's shotgun discharged, striking Herron in the upper-right chest. Herron was declared dead soon thereafter at the hospital.

Defendant argues that his speedy trial right was violated, as the 19-month delay that defendant had no part in causing was presumptively prejudicial. We disagree.

"A defendant must make a formal demand on the record to preserve a speedy trial issue for appeal." *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999) (citation and quotation marks omitted). Here, defendant never made a formal demand on the record regarding his speedy trial right. Accordingly, this issue is unpreserved for appellate review.

This Court reviews unpreserved constitutional errors for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

-1-

Plain error analysis requires three findings: 1) error, 2) that is plain, 3) which affects substantial rights. *Id.* at 763. A plain error will generally affect substantial rights when there is a showing of prejudice—"that the error affected the outcome of the lower court proceedings." *Id.* Once the three findings for plain error are met, "reversal is warranted only when the plain . . . error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (citation and quotation marks omitted).

The United States Constitution and the Michigan Constitution both guarantee a criminal defendant the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20; *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). To determine whether the right has been violated, this Court must balance four factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Id.* at 261. Where a delay is 18 months or longer, "prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id.* at 262. Thus, in sum, "a presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Id.* (citation and quotation marks omitted).

In assessing the reasons for delay factor, unexplained delays are attributed to the prosecution, and scheduling delays and docket congestion are also attributed to the prosecution. *People v Waclawski*, 286 Mich App 634, 666; 780 NW2d 321 (2009). However, while "delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Id.* (citation and quotation marks omitted). Yet, "the time needed to adjudicate defense motions is charged to the *defendant*." *People v Gilmore*, 222 Mich App 442, 461; 564 NW2d 158 (1997).

A defendant can be prejudiced by delay in two ways: "prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (citation and quotation marks omitted). As previously mentioned, where a delay is 18 months or longer, "prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id.* at 262. Thus, in a case where the delay is 18 months or longer, the prosecution must rebut the presumption that the defendant's extended incarceration was not prejudicial physically or to the legal defense. However, where the defendant's legal defense is not prejudiced by the delay, the prejudice factor weighs against the defendant, despite personal prejudice. *Id.* at 264.

Defendant's right to a speedy trial was not violated. First, in considering the length of the delay, defendant was brought to trial approximately 579 days after he was arrested.[1] Therefore,

---

[1] The record is not precisely clear when defendant was arrested. The record does indicate, however, that defendant was read his *Miranda* rights on January 3, 2013, and that he confessed to the shooting on the same day. *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694

defendant's delay is clearly more than 18 months, and accordingly, prejudice is presumed and left for the prosecution to rebut. See *id.* at 262.

Second, the reasons for delay factor does not tilt in favor of either defendant or the prosecution. January 3, 2013, to January 15, 2013 (12 days)—the time between arrest and defendant's request for competency and criminal responsibility examinations—is attributed to the prosecution, albeit neutrally, as defendant was merely awaiting process from the district court. However, January 15, 2013, to September 24, 2013 (252 days), is attributed to defendant, as this was the time defendant was awaiting his requested competency and criminal responsibility examinations. Defendant was found competent to proceed by the district court on September 24, 2013. September 24, 2013, to November 13, 2013 (50 days), is neutrally attributable to the prosecution, as defendant was awaiting his preliminary examination and bindover at this point. Furthermore, November 13, 2013, to August 5, 2014 (265 days), is neutrally attributable to the prosecution, as the prosecution was awaiting lab reports and waiting for trial to begin. In sum, defendant was responsible for roughly half of the days constituting his delay, as defendant is responsible for adjudications on his own motions. See *Gilmore*, 222 Mich App at 461 (holding that "the time needed to adjudicate defense motions is charged to *defendant*"). The prosecution in turn was neutrally responsible for the other half, as the time spent awaiting DNA lab reports and scheduling is neutrally attributable to the prosecution. See *Waclawski*, 286 Mich App at 666 (holding that delays "inherent" in the court system are neutrally attributable to the prosecution). Accordingly, this factor cannot tilt towards either defendant or the prosecution.

Third, the assertion-of-the-right factor tilts against defendant. At no point did defendant assert his right to a speedy trial. On appeal, defendant claims the following: "The record indicates that Defendant was ready for trial to commence on March 11, 2014." However, we note that defendant's trial counsel did not actually state that defendant was ready for trial to commence on March 11, 2014. Trial counsel merely said, "I have that [date] on my calendar as far as being the trial." To take such a statement as an assertion of the right to a speedy trial would be a tenuous interpretation. See *Williams*, 475 Mich at 263 (holding that because defendant had "not *objected* to any of the delays," there could be no assertion of the right to a speedy trial; emphasis added).

Finally, the prejudice factor weighs against defendant. As defendant's delay was over 18 months and presumptively prejudicial, the burden is upon the prosecution to prove that defendant's delay was not prejudicial to defendant's person or defense. *Id.* at 264. The prosecution argues on appeal that defendant does not show how the presence of Bartee as a witness would have bolstered his defense, and further contends that Bartee could have possibly been the prosecution's best witness, as he would have confirmed the account of the events that defendant himself confessed to. We agree. Considering that defendant openly confessed to the murder, Bartee's presence as a witness would not have bolstered defendant's case, and furthermore, defendant cannot describe what Bartee would have offered. While the prosecution must also rebut the presumption that defendant was personally prejudiced by the long

(1966). Therefore, defendant was arrested as early as January 3, 2013, and was certainly arrested by the time of his arraignment on January 9, 2013.

incarceration, the fact that defendant's legal defense was not prejudiced necessarily tilts the prejudice factor in favor of the prosecution. See *Williams*, 475 Mich at 264 (holding that where the legal defense is not prejudiced, the prejudice factor counts against the defendant, despite possible personal prejudice).

Considering that defendant did not assert his right to a speedy trial, was not prejudiced by the delay, and was actually largely responsible for the delay, his right to a speedy trial was not violated, and accordingly, there is no plain error affecting defendant's substantial rights. In support of this conclusion, the Michigan Supreme Court found no speedy trial violation in a case similar to the one at bar. In *Williams*, 475 Mich at 261-265, 19 months elapsed between the defendant's arrest and trial, and the defendant actually asserted his speedy trial right (albeit the day before trial). The prosecution was responsible for much of the delay, and the prosecution could not give a compelling reason as to why the defendant's case was delayed. *Id.* at 262-263. However, the defendant's legal defense was not prejudiced, as the defendant made no specific claim that his legal defense was hampered, and accordingly, no speedy trial violation was found. *Id.* at 264-265.

Next, defendant argues that the trial court erred by failing to give defendant's requested jury instructions on self-defense. We disagree.

"[J]ury instructions that involve questions of law are . . . reviewed de novo." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). However, "a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *Id.* "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Furthermore, "[a] trial court necessarily abuses its discretion when it makes an error of law." *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). Accordingly, "[w]hen a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *Id.* "A defendant asserting an affirmative defense must produce some evidence on all the elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013). "However, if an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice." *Riddle*, 467 Mich at 124. A defendant's conviction will not be overturned "unless, after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id.* at 124-125.

The affirmative defense of self-defense is codified in the Self-Defense Act (SDA). MCL 780.971 *et seq.*; *Guajardo*, 300 Mich App at 35-36. The relevant portion of the act—MCL 780.972(1)—provides the following:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another

individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

Therefore, to receive an instruction on self-defense, the defendant is responsible for presenting "some evidence" that he was not committing a crime when he used deadly force, that he honestly and reasonably believed that he was in danger of imminent death or great bodily harm, and that he honestly and reasonably believed that the use of deadly force would prevent imminent death or great bodily harm. See MCL 780.972(1)(a); *Guajardo*, 300 Mich App at 34-35.

Defendant did not present "some" evidence regarding all the elements of self-defense. Defendant argues that when Herron said "I got you" to defendant, he was in fear for his life, and was accordingly justified in shooting Herron. Herron never said "I got you" to defendant. The record indicates that Herron said to Bartee, "I could have shot you." Nonetheless, the record also indicates that defendant, Bartee, and Herron were "playing." Defendant told police officers the following:

> And my cousin had a .25 and he pointed it at Gianni like, no it won't happen like that. We was playing, we all was playing, giggling, like no it won't happen like that. I raised my gun and said it, won't happen like that. I raised it and it was going down and it shot and he just held his heart, like call the ambulance and I just went crazy.

The record makes clear that the evidence presented actually gravitates against defendant honestly and reasonably believing that deadly force was required to prevent imminent death or great bodily harm. Defendant unequivocally indicated that he was "playing" with the other two. Defendant also indicated that he was in the process of lowering the gun—"it was going down and it shot . . . ." In fact, defendant actually told police officers that the gun Herron was wielding—a "High Point 9"—was "dead," thus possibly indicating that defendant knew the gun was not functional. Moreover, defendant failed to present evidence showing that he was not in the process of committing a crime, and to the contrary, might have actually proven that he was committing a crime.[2] Therefore, defendant failed to present "some" evidence to support each element of self-defense. Accordingly, the trial court did not abuse its discretion in denying defendant's request for a self-defense jury instruction.

Finally, defendant argues that trial counsel provided ineffective assistance because he failed to request a missing witness instruction. We disagree.

---

[2] Defendant readily told police officers that they were "smoking a blunt," and brandishing their weapons at each other.

-5-

"[A] defendant must move the trial court for a new trial or evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). Here, defendant did not move for a new trial or request an evidentiary hearing regarding ineffective assistance of counsel below. Therefore, this issue is unpreserved for appellate review.

"[T]his Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law." *Lane*, 308 Mich App at 67-68. "When the trial court has not conducted a hearing to determine whether a defendant's counsel was ineffective, our review is limited to mistakes apparent from the record." *Id.* at 68.

The Sixth Amendment to the United States Constitution, as incorporated to the states through the Fourteenth Amendment, in addition to the Michigan Constitution, guarantees criminal defendants the right to the assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *Gideon v Wainwright*, 372 US 335, 345; 83 S Ct 792; 9 L Ed 2d 799 (1963). The right to counsel necessarily includes the right to effective assistance of counsel. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). Generally, to make an ineffective assistance of counsel claim, a defendant must show first that "counsel's representation fell below an objective standard of reasonableness," and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In determining whether *Strickland*'s two-part test is met, the reviewing court must be mindful that "[d]efense counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Vaughn*, 491 Mich at 670 (citation and quotation marks omitted). Additionally, "[t]he defendant must also overcome the presumption that the challenged action might be considered sound trial strategy." *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008).

Under MCL 767.40a(1), a prosecutor "shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers." Furthermore, MCL 767.40a(3) provides that "[n]ot less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial." Additionally, pursuant to MCL 767.40a(4), "[t]he prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties." In the event that the prosecution fails to produce an endorsed witness, the prosecution "may show that the witness could not be produced despite the exercise of due diligence." *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). However, "[i]f the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *Id.* "[D]ue diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of a witness . . . ." *Id.* at 391. This Court has found due diligence to exist when the prosecution pursued all reasonable leads and made multiple visits to known family members. *Id.* at 389-390 (holding that the prosecution's numerous visits and sustained contact with the missing witness's mother and girlfriend and multiple visits to the witness's known addresses constituted due diligence).

Defendant's trial counsel did not provide ineffective assistance because trial counsel's failure to ask for a missing witness instruction was not performance falling below an objective standard of reasonableness. Furthermore, even assuming that trial counsel's performance was deficient, defendant was not prejudiced. First, trial counsel's performance was adequate and objectively reasonable, as defendant was not entitled to a missing witness instruction based on the evidence presented at trial. The prosecution does not contest that defendant's father, Terry Brown, and Bartee were endorsed res gestate witnesses. However, the prosecution presented abundant evidence that it had exercised due diligence in trying to locate the two witnesses. Michigan State Police Detective Trooper Tiffany Robbins—the law enforcement officer responsible for locating Terry Brown and Bartee for trial—clearly exercised due diligence in her efforts. To locate Bartee, Detective Trooper Robbins visited Bartee's last known address, where she made contact with members of Bartee's family. Bartee's family told Detective Trooper Robbins that Bartee had been gone for several months, and provided her with an address in Port Huron, Michigan. Detective Trooper Robbins contacted her colleague, Detective VanSingel, to investigate the address, as Detective VanSingel was closer to Port Huron. At the Port Huron address, Detective VanSingel learned that Bartee had not lived there for approximately two months. With respect to Terry Brown, Detective Trooper Robbins visited two known addresses, and established contact with defendant's mother, but was informed that Terry Brown had likely left the state. Even up until trial, Detective Trooper Robbins and her team periodically checked the known addresses to see if either witness was back. The prosecution exercised due diligence in attempting to locate the two witnesses. Through Detective Trooper Robbins and her team, the prosecution made numerous visits to the witnesses' known locations, established contact with members of their families, and conducted routine checks to ensure that they were not back at the locations. These efforts are virtually indistinguishable from the prosecution's efforts in *Eccles*, 260 Mich App at 389-390. The prosecution is not required to do everything possible—only what is reasonable. *Id.* at 391. Therefore, as a missing witness instruction would not be warranted, trial counsel's failure to ask for one could not be considered performance falling below an objective standard of reasonableness.

Second, assuming that counsel's performance was deficient, defendant could not have been prejudiced. Defendant claims that Bartee, with no mention of what Terry Brown would have said, would have bolstered defendant's self-defense claim. However, as discussed above, defendant himself told police officers that the three had been "playing" and "giggling" with their guns. Defendant was in the process of lowering his gun while still "playing" and "giggling" when he shot Herron. Defendant likely knew that Herron's gun did not work. Accordingly, Bartee's testimony, even assuming that he would have said that Herron had pointed a gun at defendant, would most likely not have affected the outcome of defendant's trial. Defendant fails to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694.

Affirmed.

/s/ Amy Ronayne Krause
/s/ David H. Sawyer
/s/ Cynthia Diane Stephens