PEOPLE v ECCLES

Docket No. 242357. Submitted December 9, 2003, at Detroit. Decided January 20, 2004, at 9:10 A.M. Leave to appeal sought.

Marcus A. Eccles was convicted by a jury in the Oakland Circuit Court, Steven N. Andrews, J., of possession with intent to deliver more than 50 but less than 225 grams of cocaine. The defendant appealed.

The Court of Appeals *held*:

1. The fact that only one African-American was selected as a juror after the prosecution's exercise of challenges for cause and peremptory challenges did not deprive the defendant of his Sixth Amendment right to an impartial jury drawn from a fair cross-section of the community.

2. Four prospective jurors were excused for cause under MCR 2.511(D)(11), which provides that it is grounds for a challenge for cause that the person is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or has been accused by that party in a criminal prosecution. The challenged jurors had been the subjects of misdemeanor proceedings initiated by the county prosecutor, and the prosecutor had been both a party and an attorney adverse to the challenged jurors. Once a party shows that a prospective juror falls within the parameters of the grounds enumerated in MCR 2.511(D), the trial court is without discretion to retain the juror, who must be excused for cause.

3. The prosecutor provided a race-neutral basis for the successful peremptory challenge of an African-American prospective juror. The trial court did not abuse its discretion in rejecting the defendant's claim of racial discrimination with respect to that potential juror.

4. The trial court did not abuse its discretion in determining, under the circumstances of this case, that the prosecutor and the police used due diligence in attempting to locate and produce an endorsed witness, and in declining to instruct the jury that it could infer that the missing witness's testimony would have been unfavorable to the prosecution's case. Due diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of a witness.

Affirmed.

1. JURY — CHALLENGES FOR CAUSE — COURT RULES.

> A trial court must excuse a juror whenever a challenge for cause falls within the grounds enumerated in a court rule (MCR 2.511[D]).

2. JURY — PEREMPTORY CHALLENGES — DISCRIMINATORY USE — APPEAL.

> The Court of Appeals reviews for abuse of discretion a trial court's ruling regarding discriminatory use of peremptory challenges; great deference is given to the trial court's findings because they turn in large part on a determination of credibility.

3. CRIMINAL LAW — WITNESSES — LISTED PROSECUTION WITNESSES — DUE DILIGENCE.

> A witness listed by the prosecution for intended production at trial must be produced with due diligence; due diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of the witness.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Robert C. Williams*, Assistant Prosecuting Attorney, for the people.

*Neil J. Leithauser* for the defendant.

Before: SCHUETTE, P.J., and MURPHY and BANDSTRA, JJ.

BANDSTRA, J. Following a jury trial, defendant was convicted of possession with intent to deliver more than 50 but less than 225 grams of a controlled substance, MCL 333.7401(2)(a)(iii), for which he was sentenced to a term of life imprisonment, MCL 333.7413(1). Defendant appeals as of right. We affirm.

This case arises from a traffic stop that resulted in the discovery of more than 134 grams of cocaine hidden beneath the passenger seat of a vehicle being driven by defendant. Defendant, who is African-American, was arrested and charged with possessing the cocaine with the intent to deliver, in violation of MCL

333.7401(2)(a)(iii). On appeal, defendant argues that he was denied his constitutional right to a fair and impartial jury at the trial because only one African-American juror was seated on the jury panel. Defendant asserts that this denial was the result of the trial court having improperly excused several jurors under MCR 2.511(D)(11), and the prosecutor having excused a number of African-Americans by peremptory challenge. Defendant contends that "the combined effect" of these actions "constituted an intentional and systematic exclusion of minority jurors from the jury," which denied him the right to an impartial jury drawn from a fair cross-section of the community. We disagree.

During jury selection the prosecutor successfully challenged the seating of four members of the jury array under MCR 2.511(D)(11), which provides that it is grounds for a challenge for cause that a person "is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or has been accused by that party in a criminal prosecution." The basis for the prosecutor's challenges under this rule was that each of the jurors challenged had been the subject of misdemeanor criminal proceedings initiated by the Oakland County Prosecutor's Office. On appeal, defendant first argues that the trial court erred in granting these challenges because a county prosecutor is not a "party in a criminal prosecution" within the meaning of MCR 2.511(D)(11). We disagree.

Initially, we note that defendant failed to preserve this issue by objecting to dismissal of the challenged

jurors under MCR 2.511(D)(11).[1] Generally, we review unpreserved issues for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). However, to the extent our analysis involves interpretation of a court rule, our review is de novo. *People v Hawkins*, 468 Mich 488, 497; 668 NW2d 602 (2003).

When called on to construe a court rule, this Court applies the legal principles that govern the construction and application of statutes. *People v Holtzman*, 234 Mich App 166, 175; 593 NW2d 617 (1999). Accordingly, the rule at issue here must be construed "in accordance with 'the ordinary and approved usage of the language' " employed, and ' "in light of its purpose and the object to be accomplished by its operation.' " *Id.*, quoting *People v Gilmore*, 222 Mich App 442, 449; 564 NW2d 158 (1997).

The purpose of permitting a challenge for cause under the grounds listed in MCR 2.511(D) is explained in 3 Dean & Longhofer, Michigan Court Rules Practice, § 2511.5, p 172-173:

> The . . . grounds listed in MCR 2.511(D) on which a party may challenge a juror for cause fall into two principal categories. The first is that the person is not statutorily qualified to act as a juror. The second is that the juror is biased, *i.e.*, that the juror has preconceived opinions or prejudices, or such other interest or limitations as would impair his or her capacity to render a fair and impartial verdict.

Although, as a general matter, the determination whether to excuse a prospective juror for cause is

---

[1] Although, at the close of jury selection, defense counsel raised a general objection to the composition of the jury, he did not argue that MCR 2.511(D)(11) had been improperly applied by the trial court.

within the trial court's discretion, once a party shows that a prospective juror falls within the parameters of one of the grounds enumerated in MCR 2.511(D), the trial court is without discretion to retain that juror, who must be excused for cause. See *People v Lamar*, 153 Mich App 127, 134-135; 395 NW2d 262 (1986) ("Such a showing is equivalent to bias or prejudice at common law."). A challenge for cause under MCR 2.511(D)(11) falls within the latter of the categories described by Dean & Longhofer. See Dean & Longhofer, *supra* at 173. Indeed, that a prospective juror has been the subject of a criminal prosecution raises a question concerning that person's "capacity to render a fair and impartial verdict" in a criminal matter. *Id.*

Defendant nonetheless argues that because the rule at issue here expressly includes, as a person previously "adverse" to the prospective juror, both the "challenging party *or attorney* in a civil action," but includes only the challenging "party" when addressing a criminal prosecution, the rule does not contemplate a challenge by the prosecuting attorney in a criminal matter. We disagree. Unlike cases initiated in the civil arena, where any number of individual attorneys may be chosen to represent a particular party, it is the prosecuting attorney who represents the people in each and every criminal prosecution. This "oneness" of party and attorney explains the different language employed by the rule for criminal, as opposed to civil, actions and, when viewed in conjunction with the purpose underlying a challenge for cause as discussed above, militates against the argument advanced by defendant. Consequently, we find no error, plain or otherwise, in the trial court's grant of the prosecutor's

challenges for cause under MCR 2.511(D)(11).[2]
*Carines, supra.*

Defendant further argues that the trial court's "hard and fast policy" of granting the prosecutor's challenges under MCR 2.511(D)(11), despite the potential jurors having indicated their ability to be fair and impartial, resulted in a "systematic exclusion" of African-Americans from the jury panel.[3] In making this argument, defendant contends that because there is a higher incidence of arrest among African-Americans than any other group in Oakland County, such rigid application of the rule at issue makes it statistically more likely that African-Americans will be excluded from the jury panel.[4]

---

[2] See *Lupro v State*, 603 P2d 468, 479-480 (Alas, 1979) (rule of criminal procedure providing a challenge for cause on the ground that "the person is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or been accused by him in a criminal prosecution," did not preclude the state prosecuting attorney from challenging three potential jurors who had previously been charged with crimes; "the state was a party to the criminal proceedings").

[3] We recognize that the authorities on which defendant relied in assigning error to this result concern the "systematic exclusion" of minorities from selection into the broader jury array, rather than the panel itself. See, e.g., *Duren v Missouri*, 439 US 357; 99 S Ct 664; 58 L Ed 2d 579 (1979); see also *People v Hubbard (After Remand)*, 217 Mich App 459, 472-473; 552 NW2d 493 (1996). However, assuming without deciding that the law pertaining to selection of the jury array is equally applicable to selection of the jury panel, for the reasons stated below we find no basis to conclude that application of MCR 2.511(D)(11) resulted in such an exclusion here.

[4] In support of this argument, defendant has presented this Court with documentation regarding the incidence of arrest in Oakland County. However, these documents are not properly before this Court as they were not presented to the trial court and are, therefore, not part of the record on appeal. MCR 7.210(A)(1); see also *People v Williams*, 241 Mich App 519, 524 n 1; 616 NW2d 710 (2000) (a party may not enlarge the record on appeal). In any event, arrest statistics are somewhat irrelevant; the challenges at issue here, consistent with MCR 2.511(D)(11), pertained to prospective jurors who had been not only arrested but also charged, i.e., "accused by the [state] in a criminal prosecution." Moreover, even assum-

The right to a fair trial under the Sixth Amendment of the federal constitution requires that juries be drawn from a fair cross-section of the community. *Duren v Missouri*, 439 US 357; 99 S Ct 664; 58 L Ed 2d 579 (1979). For this reason, distinct groups represented in the community may not be systematically excluded from the jury selection process. *People v Hubbard (After Remand)*, 217 Mich App 459, 472-473; 552 NW2d 493 (1996). Generally, this Court reviews a claim of systematic exclusion de novo. *People v Williams*, 241 Mich App 519, 525; 616 NW2d 710 (2000). However, because the argument advanced here was not raised before the trial court, it is again not preserved for our review. See *People v Connor*, 209 Mich App 419, 422; 531 NW2d 734 (1995) (issues not raised before and decided by the trial court are not preserved for appeal). Accordingly, defendant is entitled to relief only upon a showing of plain error affecting his substantial rights. *Carines, supra.* Again, we find no such error here.

Initially, we note that it is not disputed that the prospective jurors at issue here had each been the subject of misdemeanor criminal prosecutions, a fact that, as discussed above, constitutes a proper ground for a prosecutorial challenge for cause under MCR 2.511(D)(11). A proper ground for a challenge for cause having been shown, the trial court was without

---

ing that a disproportionate number of African-Americans are the subject of criminal prosecutions in Oakland County, we question whether, given the purpose discussed above for excluding a prospective juror under MCR 2.511(D)(11), a prohibited "systematic exclusion" can be shown. See *People v Smith*, 463 Mich 199, 203-205; 615 NW2d 1 (2000) (determination whether a systematic exclusion of a distinctive group has been shown depends, in part, on whether the representation of that group in the jury pool is "fair and reasonable").

discretion to retain these individuals regardless of whether they asserted an ability to be fair and impartial. *Lamar, supra.* Thus, the trial court's excusing them in compliance with the rule, having not been presented with the Sixth Amendment argument defendant now raises on appeal, was not plain error.

Moreover, the record in this case is devoid of any evidence from which it can be concluded that the prospective jurors excused under MCR 2.511(D)(11) were in fact African-American. The record assuredly indicates only that three African-Americans were excused from the panel by the prosecutor. The first was excused for cause under MCR 2.511(D)(4) after she candidly expressed an inability to impartially decide the case "given the way African-American men may be depicted." The second was excused for cause under MCR 2.511(D)(2) after acknowledging a prior felony conviction.[5] The third was peremptorily excused and the trial court immediately inquired into the basis. The prosecutor explained that a son of that proposed juror had previously been prosecuted and convicted by his office. Consequently, there being no evidence from which to conclude that application of MCR 2.511(D)(11) resulted in the exclusion of any African-Americans from the jury that decided his case, defendant has failed to establish plain error affecting his substantial rights. *Carines, supra.*[6]

---

[5] MCR 2.511(D)(2) and (4) respectively provide that it is grounds for a challenge for cause that a person "has been convicted of a felony," or "shows a state of mind that will prevent the person from rendering a just verdict."

[6] For the reasons stated, this case does not present a good record on which to consider defendant's Sixth Amendment argument regarding MCR 2.511(D)(11). That argument might have merit in a different case.

We similarly find no basis on the record before us to conclude that the prosecutor improperly used his peremptory challenges to exclude African-Americans from the jury panel. See *Batson v Kentucky*, 476 US 79, 84-88; 106 S Ct 1712; 90 L Ed 2d 69 (1986) (the use of a peremptory challenge to strike a potential juror solely because of the potential juror's race violates the Equal Protection Clause of the Fourteenth Amendment). As noted above, the record discloses only one sure instance of a prospective African-American juror being peremptorily excused by the prosecutor. With respect to this challenge the trial court stated that, although no objection to this challenge was raised by the defense:

> I did summon the prosecutor at sidebar with defense counsel to find out why [the prosecutor] challenged [the prospective juror]. The prosecutor indicated to me that [the juror] had a son that was convicted in Oakland County and prosecuted by the Oakland County Prosecutor's office. That is a non-discriminatory reason, and it is one that the Court would honor.

This Court reviews for abuse of discretion a trial court's ruling regarding discriminatory use of peremptory challenges. *People v Ho*, 231 Mich App 178, 184; 585 NW2d 357 (1998). In doing so, we must give great deference to the trial court's findings because they turn in large part on a determination of credibility. *Harville v State Plumbing & Heating, Inc*, 218 Mich App 302, 319-320; 553 NW2d 377 (1996). Here, the prosecutor provided a race-neutral basis for excusing the subject juror. See *Purkett v Elem*, 514 US 765, 767; 115 S Ct 1769; 131 L Ed 2d 834 (1995). Moreover, the prosecutor failed to exercise all his peremptory challenges despite the fact that one African-American

juror remained on the panel. As noted by this Court in *People v Williams*, 174 Mich App 132, 137; 435 NW2d 469 (1989), "[t]hat the prosecutor did not try to remove all blacks from the jury is strong evidence against a showing of discrimination." Accordingly, giving deference to the trial court's ability to judge the credibility of the prosecutor's proffered basis for peremptorily excusing the subject juror, and considering that the record discloses no other use of peremptory challenges of African-American jurors, we do not conclude that the trial court abused its discretion in rejecting defendant's claim of racial discrimination in the selection of his jury.

Defendant next argues that the trial court erred in ruling that the police and the prosecution used due diligence in attempting to locate and produce Chris Turner as a witness and, accordingly, in denying defendant's request for an instruction that the jury should infer that testimony from Turner, who was also arrested for possession of the cocaine found in the vehicle, would have been adverse to the prosecution. We disagree.

A prosecutor who endorses a witness under MCL 767.40a(3) is obliged to exercise due diligence to produce that witness at trial. *People v Cummings*, 171 Mich App 577, 583-585; 430 NW2d 790 (1988). A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence. *People v Canales*, 243 Mich App 571, 577; 624 NW2d 439 (2000). If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case. CJI2d 5.12; see also *People v Snider*,

239 Mich App 393, 422; 608 NW2d 502 (2000).[7] We
review a trial court's determination of due diligence
and the appropriateness of a "missing witness"
instruction for an abuse of discretion. See *People v
Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998);
*Snider, supra*.

In this case, the evidence demonstrated that sub-
stantial efforts were made to locate Turner. The
officer in charge, Sergeant Sean Hoydic, testified at
the due diligence hearing that he had at "numerous
times" attempted to serve Turner with a subpoena to
appear as a witness in this case, but was unsuccess-
ful. Hoydic explained that after retrieving the address
listed on Turner's arrest card, which was the home of
Turner's mother, he traveled to that address where he
interviewed a number of subjects. These subjects,
however, informed Hoydic that Turner had not been
seen by them in some time. Hoydic then checked Tur-
ner's jail records for an alternative address, but found
that the address listed there was again that of Tur-
ner's mother's home. A check with the county jails in
the surrounding area similarly proved to be fruitless.
Hoydic also spoke with the mother of Turner's child,
who indicated that she too had not seen Turner "for
quite some time." However, one week before trial was
scheduled to begin, Hoydic received a telephone call
from Turner, who informed Hoydic that he was in
Shreveport, Louisiana. When informed of the trial
dates and times, Turner, who had called Hoydic from
a pay telephone, indicated that he "planned on being

---

[7] Contrary to the argument advanced by the prosecution on appeal,
such instruction remains a viable option in cases where, as here, the pros-
ecution fails to produce a witness endorsed and not otherwise properly
excused. See *People v Perez*, 469 Mich 415, 418-421; 670 NW2d 655 (2003).

[t]here because he didn't want to get blamed for any of the drugs that were in the car. . . . [H]e wanted to show up and tell his side of the story." Hoydic testified that he attempted to obtain a telephone number and address for Turner in Louisiana, but was told by Turner that "he either didn't know where he was staying or didn't know the address of where he was staying," and had no phone number. When Turner failed to appear on the first day of trial, Hoydic called Turner's mother, who informed Hoydic that Turner had not "yet" arrived. Hoydic then called the Wayne, Oakland, Macomb, Washtenaw, and Monroe county jails, as well as a number of area hospitals and morgues, to inquire whether any of those facilities had had any contact with Turner. When those efforts proved fruitless, Hoydic called the police department and jail in Shreveport, Louisiana, but was again unsuccessful in locating Turner.

On cross-examination, Hoydic acknowledged that he had not checked with the United States Postal Service to inquire whether Turner had filed a change of address card, or had made arrangements to have his mail forwarded to an address other than his mother's. Hoydic testified, however, that during the three days before trial began he had personally conducted surveillance of Turner's mother's house on a number of occasions, hoping to catch Turner coming in or going out. Hoydic also "sat on" a party store near that house, which Turner was known to frequent. Hoydic further testified that he was aware that Turner was an informant for a "drug agent in Detroit," and that this agent was contacted as well, but indicated that he had not seen Turner. Hoydic acknowledged, however, that he did not check to determine whether Turner

was registered as an informant with any federal agencies, nor did he check the federal prisons. Hoydic did, however, check Turner's name on the Law Enforcement Information Network, without any success.

In light of this testimony, which was not contested, we do not conclude that the trial court abused its discretion in determining that due diligence was shown and that, therefore, a missing witness instruction was not warranted. *Cummings, supra* at 585 (due diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of a witness); *Snider, supra.*

We affirm.