*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 12, 2019

Plaintiff-Appellee,

v

No. 345489
Wayne Circuit Court
LC No. 18-003507-01-FH

ANTHONY DAVID THOMAS,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and first-degree home invasion, MCL 750.110a(2), for breaking into the apartment of his ex-girlfriend's neighbor and attacking his ex-girlfriend with a pocket knife. Defendant challenges the sufficiency of the evidence supporting his convictions and contends that the trial court should have read a missing witness instruction as the neighbor did not appear at trial. We affirm.

## I. BACKGROUND

In the early morning hours of March 16, 2018, defendant telephoned his on-again-off-again girlfriend, JL, and asked if he could spend the night at her apartment because his home had just been "shot-up." JL agreed. Defendant was intoxicated when he arrived and continued to drink until JL confiscated his alcohol. When the pair lay down to sleep, defendant requested intercourse. JL refused and defendant accused her of sleeping with other people. Fearing that defendant would become violent, JL grabbed her cell phone and ran into the hallway of her apartment building to call 911.

Defendant followed JL and wrested her phone away. He then removed a three to four-inch pocket knife and lunged at her. JL yelled and knocked on the door of her neighbor, RM. RM opened the door to let JL in, but defendant shoved his way through as well. Defendant cornered JL in RM's apartment, threatened to kill her, and stabbed at JL's neck and face with his knife. JL broke free and ran to her own apartment. Defendant again gave chase and pushed his way into JL's apartment, where he continued to threaten JL with death. Eventually, the knife

-1-

slipped from defendant's hand and JL grabbed it. While JL called 911, defendant "trash[ed]" her apartment.

The prosecution charged defendant with AWIGBH for his assault of JL. It also charged defendant with two counts of home invasion, one against JL and the other against RM. The jury ultimately convicted defendant of the assault charge and the home invasion only as to RM.

## II. MISSING WITNESS INSTRUCTION

RM did not appear at the preliminary examination or the trial. Defense counsel labeled RM a res gestae witness and requested that an adverse inference instruction be read to the jury. The prosecutor indicated that "a subpoena was sent out to" RM for both the trial and the preliminary examination, but she had not appeared. Detroit Police Officer Tony Clark had also attempted to personally serve RM, without success. The prosecutor did not attempt to contact RM by phone as "[t]here was no contact information for her"; indeed, RM had not even provided a written statement to the police. The court denied defendant's jury instruction request, finding that "there was an attempt to find" RM and no "justification for requiring an adverse jury instruction." Defendant challenges that ruling.

"We review de novo claims of instructional error." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). However, "we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

When the prosecution fails to produce an endorsed witness without proper excuse, a missing witness instruction may be appropriate. *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003); *People v Cook*, 266 Mich App 290, 293 n 4; 702 NW2d 613 (2005). M Crim JI 5.12 permits a court to instruct the jury that the prosecutor is responsible for securing a witness's presence and that the jury may infer that an absent witness's testimony would have been unfavorable to the prosecution. However, a defendant is not automatically entitled to a missing witness jury instruction. Rather, such an instruction is only appropriate when the trial court finds that the prosecutor failed in his or her duty to exercise due diligence to secure the witness's presence at trial. *People v Eccles*, 260 Mich App 379, 388-389; 677 NW2d 76 (2004). "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).

We acknowledge that the record is rather limited regarding the prosecution's attempts to locate and secure the presence of RM at trial. But the trial court credited the prosecutor's testimony that service by mail and in person had been attempted and that RM appeared reticent to cooperate from the outset. We defer to that credibility determination and discern no ground for relief.

## III. SUFFICIENCY OF THE EVIDENCE

At the close of the prosecution's case in chief, defendant moved for a directed verdict. The trial court found sufficient evidence to place before the jury and therefore denied his motion. "When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews

the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). In this regard, all conflicts in the evidence are resolved in favor of the prosecution, and all circumstantial evidence and reasonable inferences drawn therefrom can establish satisfactory proof of the crime. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016).

Defendant contends that his home invasion conviction should be set aside because the evidence does not support that he broke into RM's apartment; rather, RM opened the door for JL and defendant followed her in. He further suggests that the prosecutor could not prove that he entered RM's apartment without permission absent RM's testimony to that effect. Defendant asserts that the prosecution insufficiently supported that he intended to cause JL great bodily harm because the knife he used was dull and JL suffered only minor harm.

To support a conviction for home invasion, the prosecution must establish that defendant either (1) broke and entered RM's apartment with the intent to commit an assault inside, (2) entered RM's apartment without permission with the intent to commit an assault inside, or (3) broke and entered RM's apartment or entered without permission and actually committed an assault inside, while armed with a dangerous weapon or while RM was lawfully in the apartment. See MCL 750.110a(2). The standard to meet one of these elements is not as stringent as defendant purports. "[W]ithout permission" simply means "without having obtained permission to enter from the owner or lessee of the dwelling . . . ." MCL 750.110a(1)(c). Breaking and entering does not require an extreme act either. "Under Michigan law, any amount of force used to open a door or window to enter the building, no matter how slight, is sufficient to constitute a breaking." *People v Toole*, 227 Mich App 656, 659; 576 NW2d 441 (1998). M Crim JI 25.2(2) defines "breaking" as follows:

> It does not matter whether anything was actually broken; however, some force must have been used. Opening a door, raising a window, and taking off a screen are all examples of enough force to count as a breaking. Entering a building through an already open door or window without using any force does not count as a breaking.

The evidence was more than sufficient to establish that defendant entered RM's apartment without permission and that he used some amount of force to enter. JL was a witness to the home invasion of RM's apartment. She testified that RM opened the door for her, not defendant, and that defendant pushed his way in as she tried to close the door behind her. It was for the jury to assess the credibility of JL's testimony, not the trial court or this Court. See *People v Musser*, 494 Mich 337, 348-349; 835 NW2d 319 (2013). Accordingly, defendant was not entitled to a directed verdict of his home invasion charge as to RM as the offense could be established under any of the statutory alternatives.

To convict a defendant of AWIGBH, the prosecution needs to prove "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230

(2005) (cleaned up).[1]  The intent to do great bodily harm has been defined as the "intent to do serious injury of an aggravated nature."  *Id*. (cleaned up).

> Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent.  Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats.  Although actual injury to the victim is not an element of the crime, injuries suffered by the victim may also be indicative of a defendant's intent.  [*People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014) (cleaned up).]

Here, defendant repeatedly threatened to kill JL while chasing her with a knife and pushing his way through doors that she attempted to block.  Knowing that JL's mother had been killed by stabbing, defendant told JL, "I am going to kill you like your mama got killed."  During the attack, defendant stabbed JL several times about the head, neck, and chest with a three to four-inch long pocket knife.  Although the hospital described JL's wounds as "superficial," she bore many visible scars that could be viewed by the jury.  This evidence was sufficient to place the charge before the jury and to support defendant's ultimate conviction.

We affirm.


/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher

---

[1] This opinion uses the parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).