*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KATRINA IRENE RUCK,

Defendant-Appellant.

UNPUBLISHED
December 16, 2024
3:43 PM

No. 364098
St. Clair Circuit Court
LC No. 22-001556-FH

Before: YOUNG, P.J., and M. J. KELLY and FEENEY, JJ.

PER CURIAM.

Defendant, Katrina Ruck, appeals as of right her jury trial convictions of possession with intent to deliver methamphetamine, MCL 333.7401(1), possession of ammunition by a felon, MCL 750.224f(1), and possession of analogues, MCL 333.7403(1). Ruck was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 8 to 20 years' imprisonment for possession of methamphetamine and 3 to 15 years' imprisonment each for possession of ammunition by a felon and possession of analogues. For the reasons stated in this opinion, we affirm Ruck's convictions, but vacate her sentence and remand for resentencing.

## I. BASIC FACTS

On June 30, 2022, the police searched Ruck's home and vehicle pursuant to a search warrant. During the search, the police officers found two bags containing methamphetamine,[1] a bag containing Methylphenidate chloride pills, $205 in cash, and multiple plastic bags containing residue[2] in Ruck's purse. In Ruck's bedroom, the officers found more plastic bags, two digital scales, a funnel, firearm ammunition, rubber gloves, needles, Narcan, and a pill bottle. Another digital scale was located in a vehicle parked in the driveway. As a result of the search, Ruck was arrested and charged with intent to deliver methamphetamine, possession of ammunition by a

---

[1] One bag contained a gram of methamphetamine and the other contained 11.49 grams of methamphetamine.

[2] The residue was not tested.

felon, and possession of analogues. The jury convicted Ruck as charged. Following sentencing, Ruck moved for a new trial and evidentiary hearing, but the trial court denied her motion. This appeal follows.

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Ruck first argues that she is entitled to a new trial because her lawyer provided ineffective assistance. This issue is preserved because Ruck moved for a new trial and an evidentiary hearing in the trial court. See *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015). We review for an abuse of discretion a trial court's decision to deny a motion for an evidentiary hearing. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. Whether a lawyer provided constitutionally ineffective assistance to a defendant "is a mixed question of fact and law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The court's factual findings are reviewed for clear error, but constitutional questions of law are reviewed de novo. *Id*. Because no evidentiary hearing was held, our review "is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

### B. ANALYSIS

In order to establish that a lawyer provided constitutionally deficient assistance, the defendant must show (1) that the lawyer's "performance fell below an objective standard of reasonableness and (2) that, but for the lawyer's "deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson,* 261 Mich App 657, 663; 683 NW2d 761 (2004).

### 1. SEARCH WARRANT

Ruck first contends that her lawyer was ineffective because he did not challenge the validity of the search warrant. More specifically, she asserts that the information contained in the affidavit for the search warrant was insufficient to establish probable cause because it was stale and lacked specificity, reliability, and credibility.[3] We disagree.

"Both the United States Constitution and the Michigan Constitution guarantee the right of the people to be free from unreasonable searches and seizures." *People v Moorman*, 331 Mich

---

[3] Ruck's arguments are based upon whether the language in the search warrant was sufficient to establish probable cause. Because there are no factual issues in need of development, the trial court did not abuse its discretion when it denied Ruck's request for an evidentiary hearing. See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007) (denying a request for an evidentiary hearing "[b]ecause defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective . . . .").

App 481, 485; 952 NW2d 597 (2020), citing US Const, Am IV and Const 1963, art 1, § 11. Search warrants must be supported by probable cause in order to justify the search. US Const, Am IV and Const 1963, art 1, § 11. "Probable cause to search exists when facts and circumstances warrant a reasonably prudent person to believe that a crime has been committed and that the evidence sought will be found in a stated place." *People v Brzezinski*, 243 Mich App 431, 433; 622 NW2d 528 (2000). "Probable cause does not require certainty. Rather, it requires only a probability or substantial chance of criminal activity." *People v Champion*, 452 Mich 92, 111 n 11; 549 NW2d 849 (1996). Under MCL 780.653, a finding of probable cause may be based upon information supplied by an unnamed individual if there are "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable" "The personal knowledge element should be derived from the information provided or material facts, not merely a recitation of the informant's having personal knowledge." *People v Stumpf*, 196 Mich App 218, 223; 492 NW2d 795 (1992). "If personal knowledge can be inferred from the stated facts, that is sufficient to find that the informant spoke with personal knowledge." *Id*.

"[S]taleness is a factor to weigh in determining if there is probable cause to search." *Id*. at 226. This is because "[i]t cannot be assumed that evidence of a crime will remain indefinitely in a given place." *Id*. However, "[t]he age of the information alone is not determinative, but must be evaluated as part of the particular circumstances of the case." *Id*.

> Time as a factor in the determination of probable cause to search is to be weighed and balanced in light of other variables in the equation, such as whether the crime is a single instance or an ongoing pattern of protracted violations, whether the inherent nature of a scheme suggests that it is probably continuing, and the nature of the property sought, that is, whether it is likely to be promptly disposed of or retained by the person committing the offense. [*People v Russo*, 439 Mich 584, 605-606; 487 NW2d 698 (1992).]

In this case, law enforcement was advised by multiple confidential informants and by an additional anonymous source that Ruck was selling illegal substances. The fact that these sources provided the same information supports their credibility. Additionally, the fact that there were two successful controlled buys supports the determination that the anonymous source and confidential informants were reliable. See *People v Head*, 211 Mich App 205, 209; 535 NW2d 563 (1995) (stating that "the reliability of the informant's statements was shown by the success of the two controlled buys").[4] Moreover, although Ruck asserts that the affidavit lacked specificity because it did not state the amount of funds used in the controlled buys or their specific dates, and did not identify which drug or drugs were purchased from Ruck, those details are not significant enough to indicate a lack of probable cause and overcome the significant amount of deference given to magistrates when making probable cause decisions. See *Mullen*, 282 Mich App at 21. Finally,

---

[4] On appeal, Ruck points out that the funds used in the controlled buys were not recovered. However, that fact, which was only apparent after the search was executed, is irrelevant to whether the information contained in the affidavit was sufficient to support a finding of probable cause to issue the warrant.

Ruck contends that the information in the affidavit was stale because the last sale referred to allegedly occurred 36 hours before the affidavit was submitted. However, given that the information in the affidavit indicates that Ruck's sale of methamphetamine was a continuing scheme, not a one-time occurrence, we conclude that the information was not stale. See *Russo*, 439 Mich at 605-606.

In sum, based upon the information contained in the affidavit, it is clear that there was probable cause to support the warrant. As a result, any challenge to the validity of the search warrant would have been meritless. Ruck's lawyer's performance, therefore, was not deficient. See *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000) (stating that a lawyer does not provide ineffective assistance by failing to advance a meritless position).

## 2. ADJOURNMENT FOR COVID-19

Ruck next contends that she was ill with COVID-19 at the time of trial and that her lawyer's failure to request an adjournment on that basis constituted ineffective assistance. We disagree.

In support of Ruck's request for an evidentiary hearing or a new trial based upon ineffective assistance, Ruck submitted an affidavit in which she averred that she was "extremely sick" during the trial and that, on the last day of trial, she tested positive for COVID-19. She contends that her lawyer "knew" that she was sick. However, she did not aver in her affidavit that she told her lawyer that she was sick. And, although Ruck tested positive for COVID-19 on the last day of the trial, the test results came in *after* the trial proceedings were concluded. Accordingly, during the trial, neither Ruck nor her lawyer were aware that she had COVID-19. Given that Ruck's lawyer was unaware that Ruck had COVID-19, we conclude that he did not provide ineffective assistance by failing to request an adjournment based upon her having COVID-19 during the trial.

Next, Ruck states that because she was "extremely sick" she was unable to contribute to her defense. However, she does not identify what aspect of assistance she would have been able to contribute to her defense in the absence of her illness. A defendant bears the burden of establishing the factual predicate for a claim of ineffective assistance. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Ruck has failed to meet that burden.

Indeed, the record belies her claim that she was unable to contribute to her defense. Ruck testified at length on the last day of her trial. Her testimony was cogent and detailed. Through her testimony, she posited that the methamphetamine in her purse was likely placed in there by someone else. When pressed on who would have done it, she indicated that she had suspicions, but could not say for sure. She never identified anyone as being responsible for the methamphetamine in her purse. Ruck did testify, however, that the prescription pills in her purse were for personal use even though they were not prescribed to her. Ruck further explained that the money was from her mother, who had returned approximately $200 that she had previously borrowed from Ruck. She testified that the ammunition in the bedroom likely belonged to her husband, who was a hunter. She did not realize that there was ammunition in the room until after the search. She suggested that the evidence located in the vehicle likely belonged to the individual who owned that vehicle. Further, she noted that some of the items in the home belonged to her husband, who was incarcerated on drug-related charges. Ruck generally denied selling drugs for money or in exchange for babysitting services. In addition Ruck also testified that she had been

present and had heard the testimony from the other witnesses in the case and that she had read the police report shortly before testifying. Given the record, it is apparent that Ruck's illness did not prevent her from being able to assist in her defense.

Ruck also contends that her physical appearance was negatively affected and may have influenced the jury's opinion of her. On appeal, she states that *if* she looked like she was "dope sick" that could have influenced the jury. However, the record is devoid of any evidence that she appeared sick, much less "dope sick" during the trial. And she did not allege in her affidavit that she, in fact, appeared to be "dope sick" as opposed to simply appearing to be sick. Moreover, the trial judge, determined that her appearance did not have any negative implications. Inasmuch as the trial judge was able to observe her during the trial, we defer to the judge's determination with regard to the effect her physical appearance would have had on the jury.

In sum, Ruck has not established that her lawyer's performance fell below an objective standard of reasonableness. Nor has she established that, but for his failure to request an adjournment because she had COVID-19, the outcome of the trial would have been different.

## II. JURY INSTRUCTIONS

### A. STANDARD OF REVIEW

Ruck next argues that the trial court erred by failing to give a missing witness jury instruction when her cousin failed to show up at trial. "We review a trial court's determination of due diligence and the appropriateness of a 'missing witness' instruction for an abuse of discretion." *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004).

### B. ANALYSIS

"A prosecutor who endorses a witness under MCL 767.40a(3) is obliged to exercise due diligence to produce that witness at trial. A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence." *Eccles*, 260 Mich App at 388. "[D]ue diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of a witness." *People v Brown*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 359376); slip op at 11 (quotation marks and citation omitted). "If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *Eccles*, 260 Mich App at 388.

The trial court concluded that the prosecution exercised due diligence to produce Ruck's cousin for trial. Ruck's cousin was charged criminally in a different case and entered a plea. The prosecution attempted to subpoena her during her court appearance in that case, but she failed to appear for her presentence investigation and for her sentencing hearing. The prosecution attempted to reach her by contacting her lawyer in that case. That lawyer communicated with Ruck's cousin via text messages, but in her responses gave several excuses for her failure to appear. The prosecution also contacted a police officer, who made three attempts to subpoena Ruck's cousin. None of the attempts were successful. On appeal, Ruck contends that these efforts were insufficient to constitute due diligence, and suggests that, in addition, the prosecution could have tracked her cousin using her phone. Again, however, due diligence does not require a prosecutor

to do everything possible to produce a witness. *Thomas*, __ Mich App at __; slip op at 11. The efforts made by the prosecution to obtain Ruck's cousin's presence at trial were reasonable and constituted due diligence. The trial court did not err by denying Ruck's request for a missing witness jury instruction.[5]

## IV. SENTENCING

Next, Ruck argues that she is entitled to resentencing because offense variable (OV) 19 was improperly scored. The prosecution has conceded error. Because the sentencing guidelines range is altered by the correction of OV 19, we vacate Ruck's sentence and remand for resentencing. See *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006).[6]

We affirm Ruck's convictions, but vacate her sentence and remand for resentencing. We do not retain jurisdiction.

> /s/ Adrienne N. Young
> /s/ Michael J. Kelly
> /s/ Kathleen A. Feeney

---

[5] Ruck's lawyer did not provide ineffective assistance by declining an opportunity to put the police officer under oath in order to create a record on whether due diligence was exercised. Based upon comments made by Ruck's lawyer, it is clear that he had no basis upon which to challenge the veracity of the representations made by the officer. Further, although Ruck is arguing that the officer could have been questioned about the failure to track her cousin using her phone number, the officer did not need to be placed under oath to make that argument.

[6] Because resentencing is required, we need not address Ruck's claim that her lawyer provided ineffective assistance by misstating her minimum sentence range.