*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVONTE FLUELLEN,

Defendant-Appellant.

UNPUBLISHED
August 22, 2024

No. 365075
Wayne Circuit Court
LC No. 21-003306-01-FH

Before: MURRAY, P.J., and BORRELLO and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of discharge of a firearm from a vehicle (DFV), MCL 750.234a, felonious assault, MCL 750.82, and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a third-offense habitual offender, MCL 769.11, to 1 to 20 years' imprisonment for DFV, one to eight years' imprisonment for felonious assault, and two years' imprisonment for his two felony-firearm convictions. We reverse defendant's convictions and remand for a new trial.[1]

At the preliminary examination, the victim testified that, while she stood in front of her apartment, defendant drove by her house and fired a gun at her two times. The victim subsequently called the police and told two officers what happened—Officer Raymond Taylor and Officer Janell Thomas, both of the Detroit Police Department (DPD). Officer Thomas wrote in her police report that the victim said she was inside of her apartment during the shooting and that defendant fired his gun into the air. Defense counsel questioned the victim about her conflicting statements at the preliminary examination, but the victim denied telling Officer Thomas that she was inside of her apartment during the shooting. Officer Thomas's police report also detailed that a res gestae witness, Luther Harvey, saw defendant drive by and shoot his gun in the air twice.

Subsequently, defendant moved to have the case dismissed because the prosecution failed to produce the footage from the body camera the police officers were wearing when the victim

___

[1] The prosecution filed its brief on appeal the day of oral argument on this matter.

told them what happened. The trial court held an evidentiary hearing. At the hearing, Detective Eric Brown of the DPD testified that body camera footage is routinely deleted 90 days after it gets uploaded to a DPD evidence website. In this case, Officer Taylor and Officer Thomas uploaded their body camera footage on September 3, 2020. It automatically deleted on December 3, 2020. On December 11, 2020, defendant's warrant was signed. The trial court held that Detective Brown did not act in bad faith by allowing the video footage to be deleted because he was following normal procedure. The trial court found that nothing in the record demonstrated that the missing video footage was indeed exculpatory. Finally, the trial court held that, because defense counsel could cross-examine the victim about her contradictory statements at trial, defendant would not be prejudiced by the missing video evidence of the victim's statements. Accordingly, the trial court denied defendant's motion to dismiss.

The victim offered the same testimony at trial as she did at the preliminary examination, but defense counsel did not question her about her contradictory statements. Neither Harvey nor Officer Thomas appeared for trial, though both were endorsed prosecution witnesses. Defense counsel informed the trial court that Officer Thomas's testimony was crucial to the defense because defense counsel planned to question Officer Thomas about the victim's statement that she was inside of her apartment during the shooting. The trial court remedied the prosecution's failure to produce the endorsed witnesses by reading two missing-witness instructions. Consequently, the victim was the only prosecution witness at trial. At the close of the prosecution's case, defense counsel requested an adjournment of the trial based on the absence of Officer Thomas. The trial court acknowledged that defendant's request to adjourn the trial was nonfrivolous and stated that the officer's absence was unacceptable. However, the trial court denied defense counsel's request to adjourn the trial, instead reiterating that it would read the missing-witness instruction.

After trial, defendant filed a motion for a new trial, arguing that his rights to a fair trial, due process, and confrontation of witnesses were violated by the failure of the prosecution to produce Officer Thomas, an endorsed witness. The trial court found that it was defense counsel's strategic decision not to cross-examine the victim about her allegedly contradictory statements, and that the missing-witness instruction cured any error with the prosecution's failure to present witnesses. Therefore, the trial court denied defendant's motion for a new trial.

After sentencing, defendant filed a motion for acquittal or a new trial, alleging that his sentence should be vacated or a new trial ordered because he was "denied exculpatory video evidence, denied exculpatory witnesses, denied the effective assistance of counsel, and/or the cumulative effect of these denials entitled him to relief." After stating that it had already ruled on three of the issues presented in defendant's motion for acquittal or a new trial, the trial court concluded that it may have been error for defense counsel not to impeach the victim with her statement in the police report about being inside the apartment during the shooting. However, the trial court then concluded that it was not reasonably probable that impeaching the victim with a police-report account of what she allegedly stated on the day of the shooting would have changed the outcome of the trial. Accordingly, the trial court denied defendant's motion for an acquittal or a new trial.

# I. MISSING VIDEO

On appeal, defendant argues that his due-process rights were violated when the police destroyed exculpatory evidence. We conclude that defendant failed to establish that the DPD violated his due-process rights when it deleted the body camera videos.

This Court reviews de novo a defendant's claim of a constitutional due-process violation. *People v Propp*, 508 Mich 374, 380; 976 NW2d 1 (2021). "To warrant reversal on a claimed due-process violation involving the failure to preserve evidence, a defendant must prove that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith." *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017) (quotation marks and citation omitted). "When the evidence is only potentially useful, a failure to preserve the evidence does not amount to a due-process violation unless a defendant establishes bad faith." *Id*. (citation omitted).

Defendant does not argue that the missing video evidence was exculpatory. Rather, he argues that the missing evidence would have been helpful to undermine the victim's credibility and that the DPD acted in bad faith by allowing the videos to be deleted. Defendant claims that the videos would have depicted the victim telling Officer Taylor and Officer Thomas that she was inside of her apartment when the shooting occurred, thereby undermining the credibility of her testimony that defendant was present during the shooting and that defendant shot at the victim. Defendant's argument is premised on his assumption that the contents of the police report accurately reflect what the videos would have depicted. Assuming this was the case, the videos would have been helpful to defendant in demonstrating that the victim stated she was inside of her apartment during the shooting and that Harvey stated defendant shot into the air. We agree with defendant's implicit concession that he could not demonstrate that the videos contained exculpatory evidence because there is no way to know for sure what the contents of the videos would have been, and even if the statements from the police reports were contained in the videos, that would have at most created a contradiction for the jury to resolve—it would not have directly exculpated defendant.

To obtain relief for the DPD's failure to preserve these potentially helpful videos, defendant needed to demonstrate that the DPD acted in bad faith when it destroyed the body camera footage. See *id*. (explaining that it is the defendant's burden to demonstrate that law enforcement personnel acted in bad faith where the unpreserved evidence was potentially beneficial to the defense). In his only attempt to demonstrate that the DPD acted in bad faith, defendant asserts that the DPD's destruction of the videos was necessarily done in bad faith because doing so violated MCL 780.316(2). MCL 780.316(2) states, "A law enforcement agency shall retain audio and video recordings that are the subject of an ongoing criminal or internal investigation, or an ongoing criminal prosecution or civil action, until the completion of the ongoing investigation or legal proceeding."

The shooting occurred on August 27, 2020. The body camera videos were uploaded on September 3, 2020. Pursuant to department policy, the videos were automatically deleted 90 days later on December 3, 2020. The warrant for defendant's arrest was signed on December 11, 2020. The foregoing demonstrates that no criminal prosecution was occurring when the videos were deleted. Whether a criminal investigation was ongoing at the time is unclear. Defendant did not provide any evidence suggesting that there was an ongoing criminal investigation concerning the

shooting when the videos were deleted. See *Dickinson*, 321 Mich App at 16 (explaining that the defendant must demonstrate that the law enforcement agency acted in bad faith). Therefore, even if defendant was correct in claiming that it is per se bad faith to destroy evidence in violation of a state statute, he has not established that happened here. Accordingly, defendant failed to demonstrate that the DPD acted in bad faith when it destroyed the videos.

Since both the Michigan Constitution and the United States Constitution require that the defendant prove the law enforcement's failure to preserve the potentially useful evidence was the result of bad faith in order to demonstrate that a defendant's due-process rights were violated, we conclude that defendant has failed to demonstrate that his state or federal due-process rights were violated. See *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."); see also *Dickinson*, 321 Mich App at 16 ("To warrant reversal on a claimed due-process violation involving the failure to preserve evidence, a defendant must prove that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith.") (quotation marks and citation omitted).

## II. MISSING WITNESSES

Defendant also argues that he was denied his right to present a defense when three witness failed to testify at trial. We conclude that defendant was not denied his right to present a defense when the prosecutor failed to present the endorsed witnesses because the trial court appropriately remedied the error by reading the missing-witness instruction to the jury.

"[T]his Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense." *People v Zitka*, 335 Mich App 324, 332; 966 NW2d 786 (2020) (quotation marks and citation omitted). A trial court's choice of remedy for a violation of MCL 767.40a is reviewed for an abuse of discretion. See *People v Everett*, 318 Mich App 511, 519; 899 NW2d 94 (2017) (explaining that trial courts have discretion in fashioning remedies for violations of MCL 767.40a); see also *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004) ("We review a trial court's determination of due diligence and the appropriateness of a missing witness instruction for an abuse of discretion.") (quotation marks and citation omitted). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Everett*, 318 Mich App at 516 (quotation marks and citation omitted).

"A defendant has a constitutionally guaranteed right to present a defense . . . ." *Zitka*, 335 Mich App at 332-333 (quotation marks and citation omitted). "But this right is not absolute: the accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. at 333 (quotation marks and citation omitted). An established procedure or evidentiary rule does not abridge a defendant's right to present a defense unless it is arbitrary or disproportionate to the purpose the rule serves. *Id*.

Pursuant to MCL 767.40a, the prosecution is obligated to provide the defendant with a list of endorsed witnesses prior to trial. *Everett*, 318 Mich App at 518. "The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties." MCL 767.40a(4). "If the

prosecution fails to produce a witness who has not been properly excused, the trial court has discretion in fashioning a remedy for the violation of MCL 767.40a, which may include a missing witness instruction." *Everett*, 318 Mich App at 519.

Though defendant claims the prosecution failed to present three endorsed witnesses, the record indicates that the prosecution only failed to present two endorsed witnesses: Officer Thomas and Harvey. Defendant argues that he relied on these witnesses to testify as part of his defense strategy. The prosecutor could not give a reason for Officer Thomas's absence, and the trial court found the excuse for Harvey's absence—a doctor's appointment—was insufficient to justify his absence. The trial court concluded that the prosecution failed to demonstrate good cause for its failure to produce Officer Thomas and Harvey. To remedy the unexcused absences, the trial court read a missing-witness jury instruction for each missing witness, which allowed the jury to infer that the testimony the missing witnesses would have offered would have been unfavorable to the prosecution's case. See *id*. at 527; M Crim JI 5.12.

This was an appropriate remedy for the prosecution's unexcused failure to produce two endorsed witnesses, and defendant failed to support his assertion that this remedy was insufficient to cure the prosecution's failure to produce its endorsed witnesses. *Everett*, 318 Mich App at 518-519. Accordingly, defendant failed to demonstrate that the trial court abused its discretion by remedying the prosecution's failure to produce two endorsed witnesses with the missing-witness instruction, and defendant failed to establish that the trial court violated his right to present a defense. See *Zitka*, 335 Mich App at 333 (explaining that an established procedure or evidentiary rule does not abridge a defendant's right to present a defense unless it is arbitrary or disproportionate to the purposes those rules serve).

## III. INEFFECTIVE ASSISTANCE

Defendant asserts he was denied the effective assistance of counsel when defense counsel failed to question the victim about statements she made before trial that contradicted the testimony she offered at trial. We conclude that defendant was not denied the effective assistance of counsel because defendant failed to demonstrate a reasonable probability that, but for defense counsel's deficient performance, the outcome of the trial would have been different.

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Clear error exists where the reviewing court is left with a "definite and firm conviction" that the lower court made a mistake. *Isrow*, 339 Mich App at 531.

A criminal defendant has the right to a fair trial which includes the right to effective assistance of counsel. *Id*. "Trial counsel is ineffective when counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. (quotation marks and citation omitted). "Trial counsel's performance is presumed to be effective, and defendant has the heavy burden of proving otherwise." *Id*. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective

standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "If counsel's strategy is reasonable, then his or her performance was not deficient." *Isrow*, 339 Mich App at 532 (quotation marks and citation omitted). When evaluating an ineffective assistance of counsel claim, there is a "strong presumption that trial counsel's decision-making is the result of sound trial strategy." *Id*. "A deficiency prejudices a defendant when there is a reasonable probability that but for trial counsel's errors, the verdict would have been different." *Id*.

Defense counsel's decision not to cross-examine the victim regarding her allegedly contradictory statements about where she was during the shooting is presumed to be a reasonable, strategic decision, and defendant has the burden of proving otherwise. See *id*. at 531-532. Defendant argues that defense counsel's failure to cross-examine the victim about her allegedly contradictory statements constituted deficient performance because highlighting that discrepancy would have undermined the victim's credibility, which was especially important in this case since the victim was the prosecution's only witness. We agree.

Drawing the jury's attention to the discrepancy between the victim's two statements about where she was during the shooting would have been beneficial to the defense because doing so would have undermined the victim's credibility and drawn into question her testimony that defendant shot *at her*—the apparent basis for defendant's felonious assault conviction. Undermining the victim's testimony was especially important because the victim was the only prosecution witness. Defense counsel may have chosen not to question the victim about her prior statement in anticipation of Officer Thomas's testimony. However, as defendant asserts, once defense counsel learned that the victim was the only prosecution witness, he should have called her as a defense witness in order to question her about her prior statement. The record even indicates that the victim was permitted to remain in the courtroom after she finished testifying.

Moreover, in denying defendant's motion to dismiss, the trial court found that defendant was not prejudiced by the missing video evidence because defense counsel could cross-examine the victim about her contradictory statements at trial. In other words, the trial court implied that the missing video evidence would prejudice defendant if defense counsel did not cross-examine the victim about her contradictory statements. This demonstrates that defense counsel's failure to cross-examine the victim about her contradictory statements was crucial to the defense. In light of the foregoing, we conclude that defense counsel's performance fell below an objective standard of reasonableness.

However, defendant failed to demonstrate that, but for defense counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. It is possible that, had defense counsel questioned the victim about her conflicting statements, she could have easily explained the discrepancy and suffered minimal to no damage to her credibility. Among other things, the victim could have rejected the accuracy of the written police report, as she did at the preliminary examination, or claimed that she misspoke while talking to the police as a result of the trauma of the shooting. The victim's response to questions about the apparent contradiction and the effect such questioning would have had on the jury is markedly unpredictable. Therefore, we cannot conclude that, but for defense counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different.

## IV. CUMULATIVE ERROR

Next, defendant argues that the destruction of exculpatory evidence, the unexcused absence of three witnesses who could have offered exculpatory evidence, and defense counsel's failure to question the victim about her contradictory statements, weighed together, require reversal. We conclude that the cumulative effect of the prosecutor's failure to present two endorsed witnesses and defense counsel's failure to question the victim about her contradictory statements seriously prejudiced defendant, entitling him to a new trial.

"We review this issue to determine if the combination of alleged errors denied defendant a fair trial." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Lowrey*, 342 Mich App 99, 119; 993 NW2d 62 (2022) (quotation marks and citation omitted). "[O]nly actual errors are aggregated when reviewing a cumulative-error argument." *People v Gaines*, 306 Mich App 289, 310; 856 NW2d 222 (2014) (quotation marks and citation omitted). "[I]n order to reverse on the basis of cumulative error, the effect of the errors must be seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *People v Unger*, 278 Mich App 210, 261; 749 NW2d 272 (2008) (alteration, quotation marks, and citation omitted).

While it is unfortunate that the video evidence was deleted, defendant failed to demonstrate that the DPD erred by allowing the videos to be deleted. As discussed earlier, the DPD did not violate MCL 780.316(2) when it allowed the videos to be deleted. However, the prosecutor violated MCL 767.40a(4) by failing to present two endorsed witnesses. The trial court's issuance of a remedial jury instruction evidences that an error occurred. Finally, as discussed earlier, defense counsel's performance was deficient when he failed to question the victim about her allegedly contradictory statements. Accordingly, two errors occurred, creating the possibility of an unduly prejudicial cumulative effect of errors. *Lowrey*, 342 Mich App at 119.

These two errors resulted in the jury not being informed of the discrepancy between the victim's statement contained in the police report and the victim's testimony at trial. This was consequential because the only evidence the prosecution presented in support of its case was the victim's testimony. See *id*. (explaining that the errors supporting a cumulative-error reversal must be of consequence). Accordingly, anything that could undermine her credibility was important to the defense. Even though the jury was instructed that it could infer that the testimony of Officer Thomas and Harvey would have been detrimental to the prosecution, it did not know that the testimony would likely have contradicted the victim's testimony. In other words, the errors resulted in the suppression of evidence that may have significantly undermined the only source on which the jury based its verdict.

Not only were the errors consequential, the cumulative effect of the errors undermined reliability in the verdict and necessitates a new trial. See *id*. ("The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in

the reliability of the verdict before a new trial is granted.") (quotation marks and citation omitted). Though not admitted at trial, the police report contained statements from three people that, if elicited at trial, would have seriously undermined the credibility of the victim's testimony—the only evidence on which defendant's convictions were based. Importantly, two of these statements were made by witnesses who, but for the prosecution's error, should have testified at trial—Officer Thomas and Harvey. Additionally, but for defense counsel's deficient performance, the third statement in the police report—the victim's statement about being inside of her apartment during the shooting—would have been brought to the jury's attention when used to impeach the victim's testimony that she was outside during the shooting, pursuant to MRE 613(b).[2]

In the police report, Officer Thomas wrote that the victim stated she was inside of her apartment during the shooting, and that defendant shot the gun into the air. The victim stated that she heard the shots, but she did not state that she saw defendant shoot the gun. Defense counsel should have questioned the victim about the discrepancies between those statements and her testimony at trial where the victim alleged that she was outside during the shooting and that defendant shot the gun in her direction. Further, had Officer Thomas appeared for trial, defense counsel could have questioned her about what the victim stated on the day of the shooting. Additionally, the police report states that Harvey told Officer Thomas that he saw defendant shoot his gun into the air—indicating defendant did not shoot at anyone. Had Officer Thomas and Harvey testified at trial, they presumably would have offered testimony consistent with the statements contained in the police report, or been impeached with the police report, pursuant to MRE 613(b). In either scenario, the jury would have been informed of the contents of the police report and the victim's credibility would have been undermined.

Had this information been relayed to the jury, it might not have found defendant guilty of DFV because firing a gun into the air does not necessarily endanger anyone's safety. See MCL 750.234a(1)(a) (explaining that if no one is injured, the discharge of the firearm must at least endanger the safety of another individual in order to convict a defendant of DFV). Further, the jury may not have found defendant guilty of felonious assault because, to be guilty of felonious assault, the perpetrator must intend to injure or place the victim in reasonable apprehension of receiving an immediate battery. *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007); see also *People v Henry (After Remand)*, 305 Mich App 127, 143; 854 NW2d 114 (2014) ("A battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person.") (quotation marks and citation omitted). Testimony that defendant shot his gun into the air would have indicated that he did not intend to injure the victim. Further, testimony that the victim was inside of her apartment when defendant fired the gun would have made it more difficult for the prosecution to establish that defendant intended to place the victim in fear of an immediate battery, especially since there were no windows on the side of the victim's apartment facing the road where defendant was when he fired

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). This opinion relies on the version of MRE 613(b) in effect at the time of trial.

the gun. Had the jury not convicted defendant of these two felonies, then it would have had no basis on which to convict defendant of felony-firearm.

When considering defense counsel's failure to cross-examine the victim in isolation, it does not appear that his deficient performance prejudiced defendant because the victim could have simply denied the accuracy of the police report's version of her statements. However, the introduction of testimony from two other witnesses that contradicted the victim's version of the incident would have substantially increased the odds of the jury rejecting the victim's testimony in part or in whole, thereby undermining confidence in the reliability of the verdict.

Instead, the evidence at trial boiled down to the classic "he said, she said" scenario, pitting the victim's testimony against defendant's testimony. The jury heard testimony from the victim that she was outside during the shooting and defendant fired the gun at her, making it easy for the jury to find defendant guilty of DFV, felonious assault, and felony-firearm. In a case where important video evidence was also missing, and no one but the victim and defendant testified, it was crucial for the jury to be presented with the evidence that undermined the victim's credibility. All of defendant's convictions rested solely on the credibility of the victim's testimony. Accordingly, we conclude that the errors created a cumulative effect that seriously prejudiced defendant, warranting the conclusion that defendant was denied a fair trial. See *Unger*, 278 Mich App at 261 ("[I]n order to reverse on the basis of cumulative error, the effect of the errors must be seriously prejudicial in order to warrant a finding that defendant was denied a fair trial.") (alteration, quotation marks, and citation omitted).[3]

Defendant's convictions are reversed, and the matter is remanded for a new trial.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Philip P. Mariani

---

[3] Because we have found cumulative error which denied defendant a fair trial, we need not address his argument that the trial court erred by denying defense counsel's motion to adjourn the trial when witnesses he needed in order to present a proper defense failed to attend trial.